DeWine, J.,
concurring.
{¶ 39} I join fully in the court’s decision. I write separately to emphasize why reconsideration is so important in this case. In my view, State v. Aalim, 150 Ohio St.3d 463, 2016-Ohio-8278, 83 N.E.3d 862 (“Aalim I”), was wrongly decided because it contains an error in legal analysis. But of even greater concern is the court’s application of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Due Course of Law Clause of the Ohio Constitution.
{¶ 40} The Due Process Clause prohibits a state from depriving “any person of life, liberty, or property, without due process of law.” Fourteenth Amendment to *503 the U.S. Constitution, Section 1. While the clause on its face would seem to concern itself with only the adequacy of procedures employed when one is deprived of life, liberty, or property, the United States Supreme Court has read it to include a substantive component that forbids some government actions “regardless of the fairness of the procedures used to implement them.” Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Unlike procedural due process, the substantive component of the Due Process Clause “is suggested neither by its language nor by preconstitutional history.” Moore v. E. Cleveland, 431 U.S. 494, 543, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (White, J., dissenting).
{¶ 41} There is a clear demarcation between the two concepts. While procedural due process assesses the adequacy of procedures employed, substantive due process reviews legislative enactments. When the legislature passes a law of general application, there is no question about the adequacy of the procedures; the legislative process provides all the process that is due. See 3 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law: Substance and Procedure, Section 17.8(c), at 130 (5th Ed.2012); 75 Acres, L.L.C. v. Miami-Dade Cty., 338 F.3d 1288, 1294 (11th Cir.2003); Richmond Boro Gun Club, Inc. v. New York, 97 F.3d 681, 689 (2d Cir.1996); Diaz v. Riverside, 895 F.2d 1416 (9th Cir.1990) (unpublished table decision), available at 1990 WL 11925, *4; Oklahoma Edn. Assn. v. Alcoholic Beverage Laws Enforcement Comm., 889 F.2d 929, 936 (10th Cir.1989); Cty. Line Joint Venture v. Grand Prairie, 839 F.2d 1142, 1144 (5th Cir.1988); Brown v. Retirement Commt. of Briggs & Stratton Retirement Plan, 797 F.2d 521, 527 (7th Cir.1986). Thus, a challenge to a generalized legislative determination—for example, that all juveniles of a certain age who are charged with certain qualifying crimes must be tried in adult court—is made under the substantive component of the Due Process Clause. Rotunda & Nowak at 130; 75 Acres at 1294; Richmond Boro Gun Club at 689; Cty. Line Joint Venture at 1144; Brown at 527.
{¶ 42} Somehow, however, our jurisprudence has muddled the two concepts. This confusion first became evident in In re C.P., 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729. There, we dealt with a challenge to automatic, lifelong registration and notification requirements for juvenile sex offenders tried within the juvenile system. Since the government action at issue was a legislative enactment that applied generally to all juveniles convicted of certain charges, the only possible due-process challenge was a substantive one. Yet, rather than analyze the challenge under traditional substantive-due-process norms—asking whether the restriction was rationally related to a legitimate legislative interest, see, e.g., Toledo v. Tellings, 114 Ohio St.3d 278, 2007-Ohio-3724, 871 N.E.2d 1152, ¶ 33—the court analyzed the enactment under a principle of fundamental fairness.
*504 {¶ 43} Heretofore, the fundamental-fairness standard had always been a procedural standard—one developed by the United States Supreme Court in assessing the adequacy of procedures employed in juvenile proceedings. See McKeiver v. Pennsylvania, 403 U.S. 528, 541-543, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (plurality opinion), citing In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Although the court was not explicit in C.P. about what it was doing—the term substantive due process was never even mentioned—the import of its decision was to take the procedural fundamental-fairness standard and transform it into a substantive standard.
{¶ 44} In Aalim I, the court went even further. The court referred to C.P. and its fundamental-fairness standard. Aalim I, 150 Ohio St.3d 463, 2016-Ohio-8278, 83 N.E.3d 862, at ¶ 19. But, perhaps in recognition of the dubious progeny of that decision as a matter of federal constitutional jurisprudence, it decided the case under the Ohio Constitution. The court did so by grafting the fundamental-fairness standard onto the Ohio Constitution: “[W]e hold that the right to due process under the Ohio Constitution requires that all children have the right to an amenability hearing before transfer to adult court and that the mandatory-transfer statutes violate the right to due process as guaranteed by Article I, Section 16 of the Ohio Constitution.” Id. at ¶ 25. Quite a feat: in C.P., the court takes a procedural due-process standard and transforms it into a substantive one; in Aalim I, that substantive due-process standard is transplanted into the Ohio Constitution. Fortunately, our rules provide us an opportunity to reconsider that decision.
{¶ 45} It is true, of course, that our state Constitution is a document of independent force that may provide greater protection than the United States Constitution. Arnold v. Cleveland, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus. But recognition that our Constitution may provide greater protection does not give us unfettered license to strike down legislative enactments with which we disagree. Rather, in construing our state Constitution, we are bound by the text of the document as understood in light of our history and traditions.
{¶ 46} Certainly nothing in the language of Article I, Section 16 of our Constitution is even remotely implicated by the mandatory-bindover provision:
All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. Suits may be brought against the state, in such courts and in such manner, as may be provided by law.
*505 And as the majority points out, nothing in our history and traditions suggests that the Due Course of Law Clause mandates that juveniles receive an individualized determination about where their case is heard. Majority opinion at ¶ 17. Just the opposite: at the time of the adoption of the Due Course of Law Clause, there were no juvenile courts in Ohio. Id.
{¶ 47} There is good reason to step back from the addition of this new substantive-due-process standard of fundamental fairness to the Ohio Constitution. The doctrine of substantive due process has been perhaps the most bedeviling and controversial part of our federal constitutional tradition. Indeed, some of the most criticized judicial decisions in American history fall under the rubric of substantive due process. See, e.g., Dred Scott v. Sandford, 60 U.S. 393, 19 How. 393, 15 L.Ed. 691 (1857); Lochner v. New York, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905). With fair justification, substantive due process has been decried as a “poster child” for judicial use of amorphous constitutional doctrine to achieve a court’s own “policy goals.” Johnson v. United States, — U.S. -, 135 S.Ct. 2551, 2567, 192 L.Ed.2d 569 (2015) (Thomas, j., concurring). Because “guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended,” courts have “always been reluctant to expand the concept of substantive due process.” Collins v. Harker Hts., 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).
{¶ 48} We should be similarly reluctant to read substantive-due-process-type concepts into the Ohio Constitution. While it is our duty to independently interpret the Ohio Constitution and to enforce its guarantees, we should not treat this responsibility as license to impose policy preferences unconnected with text and tradition. Indeed, the troubled history of federal substantive-due-process analysis ought to cause us to pause before incorporating similarly nebulous doctrine into our Constitution.
{¶ 49} Fundamental fairness makes perfect sense as a procedural standard. As courts, we are equipped by training and experience to make individualized determinations as to whether particular procedures that result in a loss of liberty are fundamentally fair. But to transform fundamental fairness into a substantive standard simply invites courts to substitute their policy preferences for those of the legislature without any standards to guide such a task.
{¶ 50} It may well be a good idea to end all mandatory bindovers. But it is not our call to make. Nothing in our Constitution ordains that we, rather than the people’s elected representatives, get to make that decision.
O’Donnell, J., concurs in the foregoing opinion.