Lanzinger, J.
{¶ 1} In this case we are asked whether certain provisions of the Revised Code that make the transfer of juveniles to adult court mandatory in specific circumstances violate constitutional due-process and equal-protection provisions. We hold that the mandatory transfer of juveniles without providing for the protection of a discretionary determination by the juvenile-court judge violates juveniles’ right to due process.
*464 I. CASE BACKGROUND
{¶ 2} In December 2013, a complaint was filed in the Juvenile Division of the Montgomery County Court of Common Pleas, alleging that appellant, Matthew I. Aalim, engaged in conduct that would be considered aggravated robbery in violation of R.C. 2911.01(A)(1) if committed by an adult. The complaint also contained a firearm specification. Appellee, the state of Ohio, filed a motion to transfer Aalim, requesting that the juvenile court relinquish jurisdiction and transfer him to the general division of the common pleas court to be tried as an adult pursuant to R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b), which provide for the mandatory transfer of juveniles to adult court in certain circumstances.
{¶ 3} After conducting a hearing, the juvenile court found that Aalim was 16 years old at the time of the alleged offense and that there was probable cause to believe that he committed the conduct alleged in the complaint, including the firearm specification. The juvenile court automatically transferred the case to the general division of the common pleas court as the statute required. An indictment was issued charging Aalim with two counts of aggravated robbery in violation of R.C. 2911.01(A)(1) with accompanying firearm specifications.[1]
{¶ 4} Aalim filed a motion to dismiss the indictment and transfer his case back to juvenile court, arguing that the mandatory transfer of juveniles pursuant to R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) violates their rights to due process and equal protection as well as the prohibition against cruel and unusual punishments under both the United States and Ohio Constitutions. The trial court overruled the motion, and Aalim entered pleas of no contest to the two counts of aggravated robbery. The court accepted the pleas, dismissed the firearm specifications consistently with a plea agreement that the parties had reached, and sentenced Aalim to concurrent prison terms of four years on each count.
{¶ 5} The Second District Court of Appeals affirmed the trial court’s judgment, rejecting Aalim’s challenges to the mandatory-transfer statutes. Rejecting Aal-im’s due-process argument, the court of appeals relied on a previous decision to hold that the mandatory-transfer scheme of R.C. 2152.12 comports with fundamental concepts of due process. 2015-Ohio-892, 2015 WL 1123001, ¶ 7-9, citing State v. Brookshire, 2d Dist. Montgomery No. 25853, 2014-Ohio-1971, 2014 WL 1887703, ¶ 30. It also rejected Aalim’s equal-protection argument, concluding that the singling out of juveniles aged 16 and 17 charged with serious offenses is rationally related to the legitimate governmental purpose of protecting society *465 and reducing violent crime by juveniles. Id. at ¶ 13-17, citing State v. Anderson, 2d Dist. Montgomery No. 25689, 2014-Ohio-4245, 2014 WL 4792558, ¶ 72-75.[2]
{¶ 6} We accepted jurisdiction over two propositions of law, which ask us to hold that R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) violate juveniles’ rights to due process and equal protection as guaranteed by the United States and Ohio Constitutions. See 143 Ohio St.3d 1498, 2015-Ohio-4468, 39 N.E.3d 1270.
II. LEGAL ANALYSIS
A. Argument Summary

1. The statutes

{¶ 7} R.C. 2152.10(A) sets forth which juvenile cases are subject to mandatory transfer and provides:
(A) A child who is alleged to be a delinquent child is eligible for mandatory transfer and shall be transferred as provided in section 2152.12 of the Revised Code in any of the following circumstances:
(1) The child is charged with a category one offense and either of the following apply:
(a) The child was sixteen years of age or older at the time of the act charged.
(b) The child was fourteen or fifteen years of age at the time of the act charged and previously was adjudicated a delinquent child for committing an act that is a category one or category two offense and was committed to the legal custody of the department of youth services upon the basis of that adjudication.
(2) The child is charged with a category two offense, other than a violation of section 2905.01 of the Revised Code, the child was sixteen years of age or older at the time of the commission of the act charged, and either or both of the following apply:
(a) The child previously was adjudicated a delinquent child for committing an act that is a category one or a category two offense and was committed to the legal custody of the department of youth services on the basis of that adjudication.
*466 (b) The child is alleged to have had a firearm on or about the child’s person or under the child’s control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged.
Aggravated robbery is a category-two offense, R.C. 2152.02(CC)(1), and Aalim was 16 years old at the time the offense was committed. Because he was also charged with a firearm specification, automatic transfer was required. R.C. 2152.10(A)(2)(b). A juvenile court must transfer automatically under these circumstances if “there is probable cause to believe that the child committed the act charged.” R.C. 2152.12(A)(l)(b)(ii).
{¶ 8} To prevail on a facial constitutional challenge to a statute, the challenging party must prove beyond a reasonable doubt that the statute is unconstitutional. State v. Romage, 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156, ¶ 7, citing State v. Warner, 55 Ohio St.3d 31, 43, 564 N.E.2d 18 (1990), citing State ex rel. Dickman v. Defenbacher, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus. Statutes are presumed constitutional, and we have stated that for a statute to be facially unconstitutional, it must be unconstitutional in all applications. Id., citing Oliver v. Cleveland Indians Baseball Co. Ltd. Partnership, 123 Ohio St.3d 278, 2009-Ohio-5030, 915 N.E.2d 1205, ¶ 13.

2. Positions of the parties

{¶ 9} Aalim presents facial due-process and equal-protection challenges to the mandatory-transfer statutes. His arguments regarding due process are (1) that fundamental fairness requires that every juvenile receive an opportunity to demonstrate a capacity to change, (2) that youth must always be considered as a mitigating—not aggravating—factor, (3) that the irrebuttable presumption of transfer contained in the statutes is fundamentally unfair, and (4) that juveniles have a substantive due-process right to have their youth and its attendant characteristics taken into account at every stage of the proceedings (including transfer).
{¶ 10} In support of his equal-protection claim, Aalim argues (1) that the mandatory-transfer statutes create classes of similarly situated juveniles who are treated differently based solely on their ages, (2) that a juvenile’s status as a juvenile is a suspect class for purposes of equal-protection analysis, and (3) that the age-based distinctions in the mandatory-transfer statutes are not rationally related to the purpose of juvenile-delinquency proceedings.
{¶ 11} The state counters that the only process due to juveniles is codified in the mandatory-transfer statutes as a special measure created for certain specified *467 circumstances. The state also argues that Aalim’s equal-protection challenge fails because the statutes do not infringe on substantive rights or affect a suspect class and are rationally related to a legitimate government interest.
B. Due Process
{¶ 12} The Fourteenth Amendment to the United States Constitution states: “No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.”
{¶ 13} As the United States Supreme Court has observed, “For all its consequence, ‘due process’ has never been, and perhaps can never be, precisely defined.” Lassiter v. Dept. of Social Servs. of Durham Cty., North Carolina, 452 U.S. 18, 24, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Due process is a flexible concept that varies depending on the importance attached to the interest at stake and the particular circumstances under which the deprivation may occur. Walters v. Natl. Assn. of Radiation Survivors, 473 U.S. 305, 320, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985). “Applying the Due Process Clause is therefore an uncertain enterprise which must discover what ‘fundamental fairness’ consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.” Lassiter at 24-25.
{¶ 14} “[NJeither the Fourteenth Amendment nor the Bill of Rights is for adults alone.” In re Gault, 387 U.S. 1, 13, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Juveniles are entitled to basic constitutional protections such as the right to counsel, the right to receive notice of the charges alleged, the privilege against self-incrimination, the application of the proof-beyond-a-reasonable-doubt standard, and the protection against double jeopardy. Schall v. Martin, 467 U.S. 253, 263, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984).
{¶ 15} Article I, Section 16 of the Ohio Constitution provides: “All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.” We have explained that the Ohio Constitution provides unique protection for Ohioans:
The Ohio Constitution is a document of independent force. In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall. As long as state courts provide at least as much protection as the United States Supreme Court has provided in its *468 interpretation of the federal Bill of Rights, state courts are unrestricted in according greater civil liberties and protections to individuals and groups.
Arnold v. Cleveland, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus. And despite the dissent’s inclination to walk in lockstep with the federal courts on constitutional matters, we have repeatedly recognized that the Ohio Constitution contains greater protections than the federal Constitution in certain instances. See Simpkins v. Grace Brethren Church of Delaware, Ohio, 149 Ohio St.3d 307, 2016-Ohio-8118, 75 N.E.3d 122, ¶ 61 (Lanzinger, J., concurring in judgment only).
{¶ 16} The juvenile courts “occupy a unique place in our legal system.” In re C.S., 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 65. The juvenile-court system is a legislative creation based on promoting social welfare and eschewing traditional, objective criminal standards and retributive notions of justice. Id. at ¶ 66. “Since its origin, the juvenile justice system has emphasized individual assessment, the best interest of the child, treatment, and rehabilitation, with a goal of reintegrating juveniles back into society.” State v. Hanning, 89 Ohio St.3d 86, 88, 728 N.E.2d 1059 (2000). “[T]he General Assembly has adhered to the core tenets of the juvenile system even as it has made substantive changes to the Juvenile Code in a get-tough response to increasing juvenile caseloads, recidivism, and the realization that the harms suffered by victims are not dependent upon the age of the perpetrator.” C.S. at ¶ 74.
{¶ 17} A common thread underlying the analysis in our juvenile cases is the recognition “that a juvenile could ‘receive}] the worst of both worlds’ in the juvenile-court system by being provided ‘neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children.’ ” Id. at ¶ 70, quoting Kent v. United States, 383 U.S. 541, 556, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). In recognition of juveniles’ need for procedural protections, our decisions have acknowledged that “numerous constitutional safeguards normally reserved for criminal prosecutions are equally applicable to juvenile delinquency proceedings.” State v. Walls, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 26. For example, we have held that juveniles have a right to counsel, In re Agler, 19 Ohio St.2d 70, 249 N.E.2d 808 (1969), paragraph one of the syllabus; a Fifth Amendment right to protection from self-incrimination, In re D.S., 111 Ohio St.3d 361, 2006-Ohio-5851, 856 N.E.2d 921, ¶ 1; and a right to full double-jeopardy protections under the Ohio Constitution, In re A.G., 148 Ohio St.3d 118, 2016-Ohio-3306, 69 N.E.3d 646, ¶ 11-12.

1. Juveniles are entitled to fundamental fairness

{¶ 18} In considering a juvenile’s right to counsel during juvenile proceedings, we noted that the phrase “due process”
*469 “expresses the requirement of ‘fundamental fairness,’ a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what ‘fundamental fairness’ consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.”
C.S. at ¶ 80, quoting Lassiter, 452 U.S. at 24-25, 101 S.Ct. 2153, 68 L.Ed.2d 640. We have accordingly observed, “Because of the state’s stake in the rehabilitation of the juvenile offender and the theoretically paternal role that the state continues to play in juvenile justice, a balanced approach is necessary to preserve the special nature of the juvenile process while protecting procedural fairness.” State v. D.H., 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, ¶ 49.
{¶ 19} We have recently discussed the concept of fundamental fairness in juvenile proceedings in holding that automatic, lifelong registration and notification requirements on juvenile sex offenders tried within the juvenile system violates due process. In re C.P., 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 71. In C.P., we emphasized that the discretion of the juvenile judge is an “essential element of the juvenile process.” Id. at ¶ 77. We accordingly held that fundamental fairness requires that the juvenile-court judge decide the appropriateness of any adult penalty for juvenile acts. Id. at ¶ 78. Of particular importance to this case, we explained that fundamental fairness may require additional procedural protections for juveniles:
[Fundamental fairness is not a one-way street that allows only for an easing of due process requirements for juveniles; instead, fundamental fairness may require, as it does in this case, additional procedural safeguards for juveniles in order to meet * * * the juvenile system’s goals of rehabilitation and reintegration into society.
Id. at ¶ 85.
{¶ 20} Aalim argues that we should apply the principles of our previous juvenile cases to hold that he is entitled to be treated as a juvenile under the jurisdiction of the juvenile court and that he should receive an amenability hearing before any transfer to the general division of common pleas court. He asserts that juvenile-court judges are in the best position to evaluate each juvenile’s suitability for juvenile or adult court, that fundamental fairness requires that juveniles have the opportunity to demonstrate a capacity to change *470 and suitability to juvenile court, and that an amenability hearing is accordingly necessary before juveniles are transferred. We agree.

2. The special status of juveniles

{¶ 21} The legislative decision to create a juvenile-court system, along with our cases addressing due-process protections for juveniles, have made clear that Ohio juveniles have been given a special status. This special status accords with recent United States Supreme Court decisions indicating that even when they are tried as adults, juveniles receive special consideration. See Roper v. Simmons, 543 U.S. 551, 570-571, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005); Graham v. Florida, 560 U.S. 48, 77-78, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010); Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 2464, 183 L.Ed.2d 407 (2012).
{¶ 22} In this line of cases, the Supreme Court has established that youth is a mitigating factor for purposes of sentencing. Roper at 570, citing Johnson v. Texas, 509 U.S. 350, 368, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993); Graham at 77-78; Miller at 476. While those cases featured Eighth Amendment claims, the court has clearly stated that “children are constitutionally different from adults for purposes of sentencing,” Miller at 471. The court has explained three significant differences between juveniles and adults:
First, children have a “ ‘lack of maturity and an underdeveloped sense of responsibility,’ ” leading to recklessness, impulsivity, and heedless risk-taking. Roper, 543 U.S., at 569, 125 S.Ct. 1183 [quoting Johnson at 367], Second, children “are more vulnerable * * * to negative influences and outside pressures,” including from their family and peers; they have limited “contro[l] over their own environment” and lack the ability to extricate themselves from horrific, crime-producing settings. Ibid. And third, a child’s character is not as “well formed” as an adult’s; his traits are “less fixed” and his actions less likely to be “evidence of irretrievable] deprav[ity].” Id., at 570, 125 S.Ct. 1183 [161 L.Ed.2d 1].
(Ellipsis sic.) Miller at 471.
{¶ 23} We have acknowledged these federal principles in our own recent holdings with respect to Ohio law. See State v. Long, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, paragraphs one and two of the syllabus (following Miller in holding that a court must separately consider on the record the youth of a juvenile offender as a mitigating factor before imposing a sentence of life without parole); A.G., 148 Ohio St.3d 118, 2016-Ohio-3306, 69 N.E.3d 646, at ¶ 13 (the *471 Ohio Constitution ensures that juveniles receive the same double-jeopardy protection as adults); State v. Bode, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, ¶ 1, 24 (under Ohio law, an uncounseled adjudication of juvenile delinquency may not be used to enhance the penalty for a later adult conviction for operating a motor vehicle while intoxicated when there was no effective waiver of the right to counsel); C.P., 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, at ¶ 78 (fundamental fairness requires that the juvenile-court judge decide the appropriateness of any adult penalty for juvenile acts).
{¶24} For purposes of delinquency proceedings, the General Assembly has chosen to treat every person under the age of 18 as a child until transfer has occurred. R.C. 2152.02(C).[3] All 16- and 17-year-olds accordingly fall under the definition of “child” and are afforded the constitutional protections that all children receive until their transfer has been completed. Their age should not be treated as the sole decisive factor in determining whether they are transferred for criminal prosecution, and it is therefore a logical step for us to hold that all children, regardless of age, must have individual consideration at amenability hearings before being transferred from the protections of juvenile court to adult court upon a finding of probable cause for certain offenses.
{¶ 25} We now recognize that because children are constitutionally required to be treated differently from adults for purposes of sentencing, juvenile procedures themselves also must account for the differences in children versus adults. The mandatory-transfer statutes preclude a juvenile-court judge from taking any individual circumstances into account before automatically sending a child who is 16 or older to adult court. This one-size-fits-all approach runs counter to the aims and goals of the juvenile system, and even those who would be amenable to the juvenile system are sent to adult court. Juvenile-court judges must be allowed the discretion that the General Assembly permits for other children. They should be able to distinguish between those children who should be treated as adults and those who should not. Cognizant of our statement in C.P. that fundamental fairness may require additional procedural safeguards for juveniles in order to meet the juvenile system’s goals of rehabilitation and reintegration into society, we hold that the right to due process under the Ohio Constitution requires that all children have the right to an amenability hearing before transfer *472 to adult court and that the mandatory-transfer statutes violate the right to due process as guaranteed by Article I, Section 16 of the Ohio Constitution.[4]
{¶ 26} Given the special status of children, we are unconvinced by the state’s argument that the only process due in these circumstances is codified in the mandatory-transfer statutes as a special measure created for certain specified circumstances. The existence of a juvenile-court system and the principles set forth in our previous cases dictate that children are fundamentally different from adults. All children are entitled to fundamental fairness in the procedures by which they may be transferred out of juvenile court for criminal prosecution, and an amenability hearing like the one required in the discretionary-transfer provisions of the Revised Code is required to satisfy that fundamental fairness.

3. Discretionary transfer

{¶ 27} The General Assembly has provided for discretionary transfer of children aged 14 or older when there is probable cause to believe the child committed the charged act, the child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions. R.C. 2152.12(B). Before transferring, the juvenile court must “order an investigation into the child’s social history, education, family situation, and any other factor bearing on whether the child is amenable to juvenile rehabilitation, including a mental examination of the child.” R.C. 2152.12(C). R.C. 2152.12(B) further provides:
In making its decision under this division, the court shall consider whether the applicable factors under division (D) of this section indicating that the case should be transferred outweigh the applicable factors under division (E) of this section indicating that the case should not be transferred. The record shall indicate the specific factors that were applicable and that the court weighed.
R.C. 2152.12(D) and (E) enumerate nonexhaustive factors in favor of and against transfer, respectively, for the juvenile court to consider. These factors include the emotional, physical, and psychological maturity of the child; the child’s previous experiences in the juvenile system; the harm suffered by the victim; whether the child was the principal actor in the conduct charged; and whether *473 the child was under any negative influence or coercion at the time of the conduct charged. R.C. 2152.12(D) and (E).
{¶ 28} The discretionary-transfer process satisfies fundamental fairness under the Ohio Constitution. It takes into account the fact that children are constitutionally different from adults for purposes of an eventual sentencing after findings of guilt. Its factors account for the differences between children and adults noted by the Miller court: children’s lack of maturity, their vulnerability to negative influences and outside pressures, and their more malleable character that makes their actions less likely to be evidence of irretrievable depravity. In doing so, the discretionary-transfer process ensures that only those children who are not amenable to dispositions in juvenile court will be transferred. Thus, while we hold that the mandatory-transfer statutes violate juveniles’ right to due process as guaranteed under the Ohio Constitution, transfer of juveniles amenable to adult court may still occur via the discretionary-transfer process set forth in R.C. 2152.10(B) and 2152.12(B) through (E).
{¶ 29} “When this court holds that a statute is unconstitutional, severing the portion that causes it to be unconstitutional may be appropriate.” Cleveland v. State, 138 Ohio St.3d 232, 2014-Ohio-86, 5 N.E.3d 644, ¶ 18, citing R.C. 1.50. We have set forth a three-part test to determine whether a statute is severable:
“(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?”
Geiger v. Geiger, 117 Ohio St. 451, 466, 160 N.E. 28 (1927), quoting State v. Bickford, 28 N.D. 36, 147 N.W. 407 (1913), paragraph 19 of the syllabus. Clearly, the mandatory-transfer provisions and discretionary-transfer provisions are capable of separation, can be read independently, and can stand independently. Furthermore, it is possible to carry out transfers of juveniles to adult court once the unconstitutional provisions are stricken. And no words or terms need to be inserted in the discretionary-transfer provisions in order to give effect to them. Therefore, having held that the mandatory-transfer provisions of R.C. 2152.10(A) and 2152.12(A) are unconstitutional, we sever those provisions. After the severance, transfers of juveniles previously subject to mandatory transfer may occur pursuant to R.C. 2152.10(B) and 2152.12(B).
*474 {¶ 30} Finally, we note that because we have concluded that the mandatory-transfer statutes are unconstitutional in violation of juveniles’ right to due process, we decline to address the equal-protection issue raised in Aalim’s second proposition of law.
III. CONCLUSION
{¶ 31} We hold that the mandatory transfer of juveniles to the general division of a common pleas court violates juveniles’ right to due process as guaranteed by Article I, Section 16 of the Ohio Constitution. We also hold that the discretionary transfer of juveniles 14 years old or older to the general division of a common pleas court pursuant to the process set forth in R.C. 2152.10(B) and 2152.12(B) through (E) satisfies due process as guaranteed by Article I, Section 16 of the Ohio Constitution.
{¶ 32} We accordingly reverse the judgment of the Second District Court of Appeals and remand the cause to the juvenile court for an amenability hearing pursuant to R.C. 2152.10 and 2152.12.
Judgment reversed and cause remanded.
O’Connor, C.J., and Pfeifer and O’Neill, JJ., concur.
Kennedy, J., concurs in part and dissents in part, with an opinion.
French, J., dissents, with an opinion joined by O’Donnell, J.

. The two counts of aggravated robbery in the indictment reflected the fact that there were two victims of the alleged conduct.

. Aalim also raised a cruel-and-unusual-punishment challenge, which the Second District rejected. 2015-Ohio-892, 2015 WL 1123001, at ¶ 19-21. He has not included his cruel-and-unusual-punishment argument in this appeal.

. R.C. 2162.02(C)(5) provides a limited exception to this rule for “any person who is adjudicated a delinquent child for the commission of an act, who has a serious youthful offender dispositional sentence imposed for the act pursuant to section 2152.13 of the Revised Code, and whose adult portion of the dispositional sentence is invoked pursuant to section 2152.14 of the Revised Code.” Under this exception, the person will no longer be considered a child in future cases in which a complaint is filed against that person.

. Because our analysis relies on the concept of fundamental fairness as developed in this court’s decisions, our holding is limited to claims arising under the Ohio Constitution, and we make no statement in this opinion on corresponding claims arising under the United States Constitution.