[Cite as *State v. Carpenter*, 2017-Ohio-8905.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2016-CA-66 |
| | : | |
| v. | : | T.C. NO. 16-CR-167 |
| | : | |
| ABRAM CARPENTER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# **O P I N I O N**

Rendered on the 8th day of December, 2017.

. . . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Assistant Prosecuting Attorney, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

JON PAUL RION, Atty. Reg. No. 0067020, 130 W. Second Street, Suite 2150, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Abram Carpenter appeals his conviction and sentence for two counts of rape, in violation of R.C. 2907.02(A)(1)(b), both felonies of the first

degree. Carpenter filed a timely notice of appeal with this Court on October 25, 2016.

{¶ 2} Carpenter is the third oldest individual in a family of ten children. The victim, H.C., is Carpenter's sister. Carpenter is eleven years older than H.C. All of the children in the family have grown up together and were home schooled by their mother. The father also lives at home and works for a company in the Dayton area.

{¶ 3} At the time the alleged rapes occurred, Carpenter was approximately fifteen years old, and H.C. testified that she was somewhere between the ages of three and five years old. H.C. testified that the rapes occurred at two houses in which the family lived. The first residence was located in Fairborn, Ohio. Specifically, H.C. testified that when she was around three years old, Carpenter would take her into the basement alone where he would then remove her clothes. After removing H.C.'s clothes, Carpenter would touch her all over her body. Although her recollection of the events which occurred at the Fairborn residence were somewhat vague, H.C. testified that after each incident with Carpenter, she would go upstairs to the bathroom and wash the blood out of her undergarments. H.C. further testified that Carpenter threatened her, stating that if she ever told anyone about what he did to her, he would kill their parents.

{¶ 4} Shortly thereafter according to H.C., the family moved into another residence located in Clark County, Ohio. The house has two floors, the second of which was unfinished when H.C.'s family initially moved there. The second floor of the house was eventually finished and turned into a living space for the boys in the family. H.C. testified that Carpenter continued to sexually abuse her after they moved into the Clark County house. When the children's mother would leave on Thursday to go grocery shopping for the week, Carpenter would take H.C. upstairs. Once there, Carpenter would remove

H.C.'s underwear and spank her with a nylon rod that their parents normally used to discipline all of the children. H.C. testified that Carpenter would then remove all of her clothes, as well as his own. H.C. testified that Carpenter would then make her sit facing away from him. Carpenter would touch H.C. all over her body, sometimes placing his fingers inside of her vagina. H.C. testified that Carpenter would then turn her around on his lap so that she was facing him and place his penis in her vagina. Carpenter would then redress H.C. and let her go back downstairs with the other children. H.C. further testified that on one occasion, Carpenter made her rub his penis. H.C. testified that on two separate occasions at the Clark County house, Carpenter put a screwdriver in her vagina.

{¶ 5} H.C. testified that Carpenter's sexual assaults stopped when she was approximately five years old when the children's father came upstairs and discovered Carpenter spanking H.C. Upon being caught by the father, Carpenter immediately stopped spanking H.C. The father testified that he was very angry at Carpenter and told him that "he had better never hurt my daughter." From that day forth, H.C. testified that sexual assaults ceased entirely. Thereafter, when Carpenter turned eighteen years old, he left home and joined the Army.

{¶ 6} Although she had disclosed the sexual assaults to members of her family and even received counseling from church pastors in February of 2015, H.C. did not report the rapes to the authorities until October 7, 2015, when she spoke to Deputy Ryan Weaver from the Clark County Sheriff's Office. H.C. spoke with Deputy Weaver for approximately three hours on that occasion. Deputy Weaver created a report based upon his conversation with H.C. and forwarded it to the detectives' bureau of the Sheriff's

Office.

{¶ 7} The case was assigned to Detective Deborah Strileckyj from the Clark County Sheriff's Office. Det. Strileckyj testified that she was generally assigned to investigate cases involving sexual assault and child sexual abuse. Det. Strileckyj spoke with H.C. on October 9, 2015, during which H.C. disclosed details of the sexual abuse she suffered at Carpenter's hands. H.C. sent Det. Strileckyj an email on October 15, 2015, in which she provided the detective additional details regarding the sexual abuse.

{¶ 8} On December 5, 2015, a meeting was held at a church in Troy between Carpenter and H.C. which was styled as a "reconciliation" meeting. Also present at the meeting were H.C. and Carpenter's parents and a pastor and his wife. The pastor had counseled H.C. in the past regarding the sexual assaults perpetrated by Carpenter. Unbeknownst to those present at the meeting, Det. Strilecyj had provided H.C. with a recording device to use at the meeting. During the meeting, H.C. specifically accused Carpenter of raping her. While Carpenter acknowledged spanking H.C. and also being mean to her, he denied raping her and stated that he could not remember any of the things that H.C. was alleging. On December 7, 2015, H.C. met with Det. Strileckyj and gave her the recording of the meeting.

{¶ 9} Det. Strileckyj contacted Carpenter in order to arrange a meeting to discuss H.C.'s allegations against him. The meeting occurred on January 1, 2016, at the Clark County Sheriff's Office. Initially, Carpenter informed Det. Strileckyj that he would not speak to her until he had talked to H.C. When questioned by Det. Strileckyj about H.C.'s allegations of sexual assault, Carpenter stated that he did not remember. Carpenter also claimed that he did not remember spanking H.C. with the nylon rod.

{¶ 10} On January 23, 2016, H.C. initiated a telephone call with Carpenter which she recorded using a device provided to her by Det. Strileckyj. H.C.'s sister, L.C., also listened in on the conversation. Carpenter again stated that he did not remember any of the sexual assaults that H.C. was alleging. Additionally, Carpenter informed H.C. that he was in the process of requesting his medical records in order to establish that he suffered from and had been treated for memory loss. H.C. met with Det. Strileckyj on January 26, 2016, and returned the recording of the telephone conversation.

{¶ 11} Thereafter, on April 4, 2016, Carpenter was indicted for two counts of rape of a child under the age of thirteen. The indictment further stated that both rapes were alleged to have occurred between the dates of January 1, 1998, and December 31, 1999. At his arraignment on April 11, 2016, Carpenter pled not guilty to both counts in the indictment. Carpenter posted bond and was released from custody.

{¶ 12} On August 19, 2016, Carpenter filed a waiver of his right to jury trial and elected to have his case tried to the bench. The bench trial was held August 30, 2016, through September 2, 2016. On September 6, 2016, the trial court found Carpenter guilty of both counts of rape and ordered that a pre-sentence investigation report (PSI) be prepared. On October 6, 2016, the trial court sentenced Carpenter to four years on each rape count, but ordered that the sentences be served concurrently for an aggregate term of four years in prison. Carpenter was also designated a sexually oriented offender.

{¶ 13} It is from this judgment that Carpenter now appeals.

{¶ 14} Carpenter's first assignment of error is as follows:

{¶ 15} "THE PROVISIONS OF CHAPTER 2151 WHICH REQUIRE A JUVENILE OFFENDER TO BE PROSECUTED AS AN ADULT BECAUSE THEY ARE NOT

CHARGED UNTIL AFTER ATTAINING TWENTY-ONE YEARS OF AGE ARE UNCONSTITUTIONAL."

{¶ 16} In his first assignment, Carpenter contends that "R.C. 2151.02(C)(3) [sic] and R.C. 2151.23(I)," the statutory provisions under which he was tried as an adult, violate due process and equal protection under the Fourteenth Amendment, and are therefore, unconstitutional. Specifically, Carpenter argues that it is unconstitutional for him to have been prosecuted as an adult when he committed the charged offenses as a juvenile.

{¶ 17} In support of his argument, Carpenter relies upon the Ohio Supreme Court decision *State v. Aalim*, 150 Ohio St.3d 463, 2016-Ohio-8278, 83 N.E.3d 862 ("*Aalim I*"), which held that the mandatory transfer provisions in R.C. 2152.10(A) and 2152.12(A) were unconstitutional as they violate a child's right to due process. After appellant filed his appeal and submitted his brief, the Supreme Court of Ohio reconsidered *Aalim I*, and found the mandatory transfer of juveniles to the general division of the common pleas court did not violate either the Ohio Constitution or the United States Constitution. *State v. Aalim*, 150 Ohio St.3d 489, 2017–Ohio–2956, 83 N.E.3d 883 ("*Aalim II*"). Specifically, the Supreme Court held:

> Because this court failed in *Aalim I*, * * * to consider the General Assembly's exclusive constitutional authority to define the jurisdiction of the courts of common pleas under Article IV, Section 4(B) of the Ohio Constitution, we grant the state's motion for reconsideration pursuant to S.Ct.Prac.R. 18.02. Upon reconsideration, we hold that the mandatory bindover of certain juvenile offenders under R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) complies with due process and equal protection as guaranteed by the Ohio

and United States Constitutions. We therefore vacate our decision in *Aalim I*, and we affirm the judgment of the court of appeals upholding the trial court's denial of Aalim's motion to dismiss his indictment.

*Id.* at ¶ 38.

{¶ 18} In his reply brief filed after *Aalim II* was decided, Carpenter concedes that his reliance on *Aalim I* is misplaced. Based upon the Ohio Supreme Court's holding in *Aalim II*, Ohio's mandatory bindover statutes are constitutional and do *not* violate due process or equal protection. *Id.* at ¶ 27, 37. Furthermore, in *State v. Warren,* 118 Ohio St.3d 200, 2008–Ohio–2011, 887 N.E.2d 1145, the Supreme Court of Ohio held that due process and fundamental fairness were not violated by the application of R.C. 2152.02(C)(3), 2151.23(I), and 2152.12(J) to the defendant when he was prosecuted as an adult and sentenced to life in prison for the rape of a child under 13 when he was 15 at the time of the offense, but not prosecuted until he was over 21. *Id.* at ¶ 58.

{¶ 19} Carpenter's first assignment of error is overruled.

{¶ 20} Carpenter's second and final assignment of error is as follows:

{¶ 21} "THERE WAS INSUFFICIENT EVIDENCE FOR MR. CARPENTER TO BE CONVICTED OF RAPE."

{¶ 22} In his final assignment, Carpenter argues that the State failed to adduce sufficient evidence to convict him of the rapes of H.C. Although not affirmatively stated in his assignment of error, Carpenter also contends that his convictions were not supported by the manifest weight of the evidence.

{¶ 23} "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " (Citations omitted). *State v. Crowley,* 2d Dist. Clark No. 2007 CA 99, 2008–Ohio–4636, ¶ 12.

{¶ 24} "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight,* 107 Ohio St.3d 101, 2005–Ohio–6046, 837 N.E.2d 315, ¶69. "A claim that a jury verdict is against the manifest weight of the evidence involves a different test. 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.* at ¶ 71. *See also State v. Mahe*, 2d Dist. Montgomery No. 27309, 2017-Ohio-7516, ¶ 20 (bench trial).

{¶ 25} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass,* 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 26} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley,* 2d Dist. Champaign No. 97–CA–03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 27} R.C. 2907.02(A)(1) provides: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * (b) The other person is less than thirteen years of age * * *." R.C. 2907.01(A) provides: " 'Sexual conduct' means vaginal intercourse between a male and female * * *. Penetration, however slight, is sufficient to complete vaginal * * * intercourse."

{¶ 28} The fact that no other testimony corroborated H.C.'s testimony regarding the rapes did not necessarily render her testimony less credible. The testimony of a person victimized by sexual misconduct need not be corroborated. *State v. Robinson*, 6th Dist. Lucas No. L-09-1001, 2010-Ohio-4713, ¶ 100. There is no requirement, statutory or otherwise, that a rape victim's testimony must be corroborated as a condition precedent to conviction. *Id.* It is well settled that the testimony of a rape victim, if believed, is sufficient to support each element of rape. *Id.*

{¶ 29} In the instant case, H.C. testified that when the children's mother would leave on Thursday to go grocery shopping for the week, Carpenter would take H.C. upstairs in the family's Clark County house. Once there, Carpenter would remove H.C.'s underwear and spank her with a nylon rod that their parents normally used to discipline all of the children. H.C. testified that Carpenter would then remove all of her clothes, as well as his own. H.C. testified that at that point, Carpenter would make her sit facing away from him. Carpenter would touch H.C. all over her body, sometimes placing his

fingers inside of her vagina. H.C. testified that Carpenter would then turn her around on his lap so that she was facing him and place his penis in her vagina. Carpenter would then redress H.C. and let her go back downstairs with the other children. H.C. further testified that on two separate occasions at the Clark County house, Carpenter put a screwdriver in her vagina.

{¶ 30} Construing the evidence presented in a light most favorable to the State, as we must, we conclude that a rational trier of fact could find all of the essential elements of the crimes of rape to have been proven beyond a reasonable doubt. Carpenter's rape convictions are therefore supported by legally sufficient evidence.

{¶ 31} Finally, Carpenter's convictions are not against the manifest weight of the evidence. The credibility of the witnesses and the weight to be given their testimony were matters for the trier of fact to resolve. Carpenter's defense at trial was that the alleged sexual abuse never happened and that H.C. had made false allegations because of her dislike of Carpenter for being mean to her when she was a child. However, the trial court did not lose its way simply because it chose to believe the testimony of H.C. who testified at length regarding Carpenter forcing her to submit to multiple instances of digital and penile rape, as well as the instances wherein he inserted a screwdriver into her vagina. Additionally, the indictment alleged that both counts of rape occurred between January 1, 1998, and December 31, 1999. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against conviction, or that a manifest miscarriage of justice has occurred.

{¶ 32} Carpenter's second and final assignment of error is overruled.

{¶ 33} Both of Carpenter's assignments of error having been overruled, the

judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, P.J. and TUCKER, J., concur.

Copies mailed to:

Andrew P. Pickering
Jon Paul Rion
Hon. Douglas M. Rastatter