[Cite as *Dayton v. Smith*, 2018-Ohio-675.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

CITY OF DAYTON                                             :
                                                                           :
     *Plaintiff-Appellee*                       :    Appellate Case No. 27535
                                                                           :
v.                                                                       :    Trial Court Case No. 2016-CRB-3148
                                                                           :
JOHNIECSA SMITH                                      :    (Criminal Appeal from Municipal Court)
                                                                           :
    *Defendant-Appellant*                   :
                                                                           :

. . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of February, 2018.

. . . . . . . . . .

MATTHEW KORTJOHN, Atty. Reg. No. 0083743, Assistant City of Dayton Prosecutor, 335 West Third Street, Room 372, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

J. ALLEN WILMES, Atty. Reg. No. 0012093, 7821 North Dixie Drive, Dayton, Ohio 45414
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-appellant, Johniecsa Smith, appeals from her conviction in the

Dayton Municipal Court, following a bench trial, for one count of failing to control her dogs

in violation of section 91.50(A)(5) of the Dayton Revised Code of General Ordinances

("R.C.G.O."). In support of her appeal, Smith contends that her conviction is against the manifest weight of the evidence. Smith also contends that the language in R.C.G.O. 91.50(D)(2), which sets forth an affirmative defense to a violation of R.C.G.O. 91.50(A)(5), is unconstitutionally vague. For the reasons outlined below, the judgment of the trial court will be affirmed.

## Facts and Course of Proceedings

{¶ 2} On May 16, 2016, Smith was charged by complaint with one count of failing to control her dogs in violation of R.C.G.O. 91.50(A)(5), a first-degree misdemeanor. Smith pled not guilty to the charge and the matter proceeded to a bench trial on December 1, 2016.

{¶ 3} At trial, the State presented the testimony of Gregory Beal, II ("Gregory"). Gregory is the adult son of Smith's neighbors, Gregory Beal, Sr. and Tiffany Beal, who reside at 430 Red Haw Road in Dayton, Ohio. Gregory testified that on May 10, 2016, he was visiting his father and stepmother's residence on Red Haw Road when Tiffany asked him to let their three toy poodles, Snoop, Gizmo, and Cocoa, outside to relieve themselves. Per Tiffany's request, Gregory let the poodles outside and allowed them to roam around the Beals' backyard unleashed while he watched them from the Beals' garage.

{¶ 4} Gregory testified that Snoop the poodle was standing near a broken fence that separated the Beals' property from Smith's adjacent property at 424 Red Haw Road when Smith's two dogs, Buddy and Remy, an American Bulldog mix and a Pitbull, began barking and growling at Snoop. In response, Gregory called for the poodles to come

back to the house. As Snoop began to make his way toward the Beals' garage, Gregory observed Buddy come onto the Beals' driveway through the broken fence and "snatch" Snoop. Trial Trans. (Dec. 1, 2016), p. 36-41. Specifically, Gregory testified that Buddy grabbed Snoop by the neck with his mouth, shook Snoop a little, and then took him to Smith's backyard where Snoop was later found dead.

{¶ 5} In addition to Gregory's testimony, Tiffany Beal testified that four to five minutes after she asked Gregory to let her three poodles outside, Gregory came back in the house and told her that "the neighbor's dog had grabbed Snoop." Trial Trans. (Dec. 16, 2016), p. 91. In response, Tiffany testified that she and Gregory ran outside and attempted to call for Snoop at the broken fence, which she claimed belonged to Smith. Tiffany testified that Smith's two dogs, Buddy and Remy, then began to approach her. Since she did not know whether the dogs were secured, Tiffany testified that she decided to back up and knock on Smith's door and ask if Snoop was in Smith's backyard. Tiffany testified that Smith's husband, Gary Smith, eventually came to the door and looked for Snoop in his backyard. Tiffany testified that when Gary returned, he advised her that Snoop was dead.

{¶ 6} Tiffany and Gregory both testified that they called the police to report the incident. Officer Chris Smith of the Dayton Police Department and Officer Josh Cusick of the Animal Resource Center arrived at the scene shortly thereafter. Both officers testified that when they arrived at 424/430 Red Haw Road they observed the Beals' toy poodle, Snoop, deceased in Smith's backyard. Cusick testified that he observed puncture wounds in Snoop's neck, abdomen, and rib cage.

{¶ 7} Both officers also testified that they inspected the leads on which Smith's

dogs were attached and determined that the leads were long enough to extend through the broken fence and into the Beals' backyard. According to the officers, the leads were connected to a main chain that was wrapped around a tree in Smith's backyard. Officer Cusick testified that he did not have to move or untie the leads from anything or manipulate the leads in any way to get them to extend into the Beals' property. Similarly, Officer Smith testified that he did not have to remove any kind of debris or unhook the leads from anything to be able to pull them into the Beals' driveway.

{¶ 8} Officer Cusick further testified that on the day in question he took photographs of the scene, the leads upon which Smith's two dogs were attached, and Snoop's body. The photographs were admitted into evidence as State's Exhibit Nos. 1-9. Both officers testified that the photograph marked as Exhibit 9 depicts the two leads coming through the broken fence and onto the Beals' driveway.

{¶ 9} Smith and her husband Gary also testified at trial. As part of their testimony, the Smiths did not deny that one or both of their dogs, Buddy and Remy, caused Snoop's death. However, as an affirmative defense, the Smiths attempted to prove that Snoop was unlawfully on their property and that Buddy and Remy were properly secured. To that end, the Smiths testified that a 100 to 120-pound plastic igloo doghouse was sitting on top of the main chain securing Buddy and Remy's leads. According to the Smiths, the position of the igloo doghouse on the main chain prevented the two connecting leads from reaching the Beals' property.

{¶ 10} Smith testified that she showed Officer Cusick how the main chain went underneath the igloo doghouse by rolling the igloo doghouse over, thereby releasing the main chain. Smith also testified that the main chain was imbedded in the earth and had

to be uprooted due to a large piece of carpet that was previously laying on top of the main chain. However, Smith indicated the carpet had since been removed and was not present on the day Snoop was attacked. Smith claimed that the connecting leads were measured by Officer Cusick *after* she uprooted and released the main chain from the igloo doghouse, thus permitting the connecting leads to reach the Beals' property. While the Smiths testified that it would be "possible" for their dogs to move the chain from underneath the igloo doghouse, they claimed that neither the chain nor the igloo was out of place at the time of the incident in question.

{¶ 11} After considering all the evidence presented at trial, the trial court found Smith guilty of failing to control her dogs in violation of R.C.G.O. 91.50(A)(5). Following its decision, the trial court sentenced Smith to 180 days in jail, which the trial court suspended, five years of probation, and restitution in the amount of $750 to be split equally with her husband Gary, who was also convicted of violating R.C.G.O. 91.50(A)(5). The trial court also ordered Smith not to have any contact with the Beals, to obtain a dangerous dog designation within ten days, and to transfer her dogs Buddy and Remy to someone else. Smith was further ordered not to have any dog on her residence, regardless of ownership, for five years.

{¶ 12} Smith now appeals from her conviction, raising two assignments of error for review.

## First Assignment of Error

{¶ 13} Smith's First Assignment of Error is as follows:

THE TRIAL COURT'S VERDICT OF GUILTY WAS CONTRARY TO THE

MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 14} Under her First Assignment of Error, Smith contends that her conviction for failing to control her dogs in violation of R.C.G.O. 91.50(A)(5) was against the manifest weight of the evidence because the trial court failed to properly weigh evidence demonstrating that she established the affirmative defense codified in R.C.G.O. 91.50(D)(2). We disagree.

{¶ 15} "When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 16} "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve." *State v. McDonald*, 2d Dist. Montgomery No. 27237, 2017-Ohio-8496, ¶ 21, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). " 'Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision

whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.' " *Id.*, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 17} "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict." *State v. Carpenter*, 2d Dist. Clark No. 2016-CA-66, 2017-Ohio-8905, ¶ 26, citing *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510, *4 (Oct. 24, 1997).

{¶ 18} As previously noted, Smith was convicted for violating R.C.G.O. 91.50(A)(5), which provides that: "No person owning, keeping, possessing, harboring, maintaining, or having the care, custody, or control of a dog shall suffer or permit such dog to: * * * Bite or otherwise cause physical harm to any other person, domestic animal, or feline." Smith does not dispute that she was the owner of the two dogs at 424 Red Haw Road that bit and killed the Beals' toy poodle, Snoop. Instead, Smith submits that the weight of the evidence demonstrates that she established the affirmative defense codified in R.C.G.O. 91.50(D)(2).

{¶ 19} Pursuant to R.C.G.O. 91.50(D)(2): "It shall be an affirmative defense to a violation of § 91.50(A)(3), (4), and (5) that at the time of the occurrence such other person, domestic animal, or feline was unlawfully on the property owned or controlled by the owner of such dog, and that such dog was not unsecured." The term "unsecured" is defined as "not securely confined indoors, or not securely restrained by means of a collar and chain, pen, fence, or similar physical device, and in such a manner which effectively

prevents the animal from going beyond the premises of the owner." R.C.G.O. 91.01.

{¶ 20} Because Smith does not dispute the facts giving rise to a violation of R.C.G.O. 91.50(A)(5), the threshold issue is whether the weight of the evidence indicates that the Beals' dog Snoop was unlawfully on Smith's property at the time her dogs Buddy and Remy attacked Snoop, as well as whether Smith's dogs were not "unsecured" at the time of the attack.

{¶ 21} The sole eyewitness to the incident, Gregory Beal, II, testified that one of the Smiths' dogs, Buddy, came onto the Beals' driveway, "snatched" Snoop by the neck, and took Snoop to the Smiths' backyard where Snoop was later found dead with several puncture wounds. Following the incident, both Officers Smith and Cusick testified that they inspected the leads on which Buddy and Smith's other dog, Remy, were attached and observed that the leads could stretch over onto the Beals' property. The officers' testimony was corroborated by photographic evidence showing the leads extending through a broken fence and crossing onto the Beals' driveway.

{¶ 22} Despite this evidence, Smith claims that the weight of the evidence presented at trial establishes that Snoop was unlawfully on her property, and that her dogs Buddy and Remy were not "unsecured" at the time of the attack. In support of this claim, Smith relies on her and her husband Gary's trial testimony that the main chain on which Buddy and Remy's leads were attached was sitting underneath a 100 to 120-pound plastic igloo doghouse that prevented the leads from extending into the Beals' property. Smith also relies on her testimony that she "rolled" the igloo doghouse over to free the main chain before Officer Cusick inspected the length of the connecting leads. Accordingly, Smith proposes the weight of the evidence establishes that Snoop must

have been on her property at the time of the attack, because the presence of the igloo doghouse prevented her dogs from going onto the Beals' property.

{¶ 23} Smith's claim lacks merit because neither Officer Smith nor Officer Cusick testified to observing an igloo doghouse on top of the main chain, nor does any of the photographic evidence depict the igloo doghouse in question. In fact, as noted above, Officer Smith specifically testified that he did not have to remove any debris or unhook the leads from anything to extend the leads into the Beals' property. Office Cusick also testified that he did not move or untie the leads from anything or manipulate the leads in any way when he inspected their length. Officer Cusick further testified that Smith never mentioned using an igloo doghouse or anything else other than the leads to restrain her dogs.

{¶ 24} Based on the foregoing, we cannot say that Smith's conviction was against the manifest weight of the evidence. More specifically, the weight of the evidence does not support the affirmative defense in R.C.G.O. 91.50(D)(2). The testimony of Officers Smith and Cusick and the photographic evidence indicates that Smith's dogs, Buddy and Remy, had the ability to go onto the Beals' property due to the length of their leads. This is further supported by Gregory's eyewitness testimony that Smith's dog, Buddy, came onto the Beals' driveway, grabbed Snoop by the neck, and took him into Smith's backyard.

{¶ 25} Although Smith and her husband testified that the igloo doghouse in their backyard prevented their dogs' leads from extending onto the Beals' property, the trial court was not required to find their testimony on that matter credible. The trial court, in its discretion, was free to place greater weight on Gregory's testimony that Snoop was on the Beals' property when Buddy came through the fence and grabbed him. Thus, we

cannot say the trial court lost its way and created a manifest miscarriage of justice in finding that the affirmative defense in R.C.G.O. 91.50(D)(2) had not been established.

{¶ 26} Smith's First Assignment of Error is overruled.


**Second Assignment of Error**

{¶ 27} Smith's Second Assignment of Error is as follows:

THE INSTANT STATUTE WAS UNCONSTITUTIONALLY AMBIGUOUS MAKING A CONVICTION THEREFORE ILLEGAL AND REVERSIBLE.

{¶ 28} Under her Second Assignment of Error, Smith contends that the language governing the affirmative defense in R.C.G.O. 91.50(D)(2) is unconstitutionally vague. Specifically, Smith claims the phrase "such dog" is ambiguous because it is unclear what dog R.C.G.O. 91.50(D)(2) is referring to. As a result, Smith claims the ordinance does not clearly indicate what a defendant must prove to establish the affirmative defense described therein, and is therefore void for vagueness. We again disagree.

{¶ 29} As a preliminary matter, we note that Smith did not raise the aforementioned void for vagueness issue before the trial court. It is well established that " 'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' " *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. (Other citations omitted.) "[T]he question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court." (Citation

omitted.) *Id.* at 122. Smith, therefore, forfeited her constitutional challenge to R.C.G.O. 91.50(D)(2) by failing to object to its alleged ambiguity in the trial court. *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15.

{¶ 30} Nevertheless, "[e]ven where waiver is clear, this court reserves the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it." *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus. To demonstrate plain error, it must be shown that "but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice." *Quarterman* at ¶ 16, citing *State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706, 939 N.E.2d 147, ¶ 29. "The burden of demonstrating plain error is on the party asserting it." *Id.*, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 17.

{¶ 31} In this case, we do not find that the phrase "such dog" in R.C.G.O. 91.50(D)(2) presents a plain or obvious error that warrants a reversal of Smith's conviction on grounds of vagueness. "[W]hen a statute is challenged under the due process doctrine of vagueness, a court must determine whether the enactment (1) provides sufficient notice of its proscriptions and (2) contains reasonably clear guidelines to prevent official arbitrariness or discrimination in its enforcement." *Perez v. Cleveland*, 78 Ohio St.3d 376, 378, 678 N.E.2d 537 (1997), citing *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).

{¶ 32} When R.C.G.O. 91.50(D)(2) is read in conjunction with 91.50(A)(5) the meaning of the phrase "such dog" in section (D)(2) becomes clear, as those provisions provide:

(A) No person owning, keeping, possessing, harboring, maintaining, or having the care, custody, or control of a dog shall suffer or permit such dog to: * * * (5) Bite or otherwise cause physical harm to any other person, domestic animal, or feline.

(D) Defenses. * * * (2) It shall be an affirmative defense to a violation of § 91.50(A)(3), (4), and (5) that at the time of the occurrence such other person, domestic animal, or feline was unlawfully on the property owned or controlled by the owner of such dog, and that such dog was not unsecured.

{¶ 33} In reading these provisions, it is clear that the phrase "such dog" in R.C.G.O. 91.50(D)(2) is referring to the dog that bit or caused physical harm to another person or domestic animal. Accordingly, we find R.C.G.O. 91.50(D)(2) is drafted with enough clarity to provide sufficient notice of what a defendant must prove to establish the affirmative defense described therein. In other words, R.C.G.O. 91.50(D)(2) is not unconstitutionally vague, and Smith's claim otherwise lacks merit.

{¶ 34} Smith's Second Assignment of Error is overruled.

## Conclusion

{¶ 35} Having overruled both assignments of error raised by Smith, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies mailed to:

Matthew Kortjohn
J. Allen Wilmes
Hon. Deirdre E. Logan