[Cite as *State v. Franklin*, 2019-Ohio-3760.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 107482 |
| v. | : | |
| MALICKE FRANKLIN, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 19, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-622587-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anthony Thomas Miranda and Daniel A. Cleary, Assistant Prosecuting Attorneys, *for appellee.*

Paul W. Flowers Co., L.P.A., and Louis E. Grube, *for appellant.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant, Malicke Franklin ("Malicke") appeals from his convictions and sentence following a guilty plea. He raises the following assignments of error for review:

1. The general division of the court of common pleas lacked subject matter jurisdiction because there was no enforceable statute authorizing the defendant's transfer without an amenability hearing.

2. The trial court committed plain error by failing to merge all of defendant's conviction at sentencing.

3. Defendant's counsel was constitutionally ineffective by agreeing that counts one and four were not allied offenses and by failing to argue that defendant's convictions for inextricably related crimes should have merged.

4. The findings made by the trial court in support of the defendant's consecutive sentences pursuant to R.C. 2929.14(C)(4) clearly and convincingly lack support in the record.

5. The findings made by the trial court in support of the defendant's length of sentence pursuant to R.C. 2929.11 and 2929.12 clearly and convincingly lack support in the record.

6. If R.C. 2953.08(G)(2)(a) entirely forecloses review of findings made pursuant to R.C. 2929.11 and 2929.12 the statute violates the due process clauses of the Ohio and United States Constitutions.

{¶ 2} After careful review of the record and relevant case law, we affirm.

## I. Procedural and Factual History

{¶ 3} In June 2017, Malicke was charged in the Cuyahoga County Court of Common Pleas, Juvenile Division, with three counts of aggravated murder, one count of aggravated burglary, and one count of kidnapping. In August 2017, the state moved for an order transferring jurisdiction to the court's general division. The juvenile court held a hearing and determined that Malicke was subject to mandatory transfer.

{¶ 4} After jurisdiction was transferred, Malicke and his codefendants, Holley Hentges ("Hentges") and Nicholas Franklin ("Nicholas"), were named in an

eight-count indictment, charging them each with aggravated murder in violation of R.C. 2903.01(A); aggravated murder in violation of R.C. 2903.01(B); murder in violation of R.C. 2903.02(B); three counts of aggravated burglary in violation 2911.11(A)(1); felonious assault in violation of R.C. 2903.11(A)(1); and kidnapping in violation of R.C. 2905.01(A)(3). The indictment stemmed from allegations that then 16-year old Malicke accompanied his mother, codefendant Hentges, and his older brother, codefendant Nicholas, to the home of C.F., with the intent to cause C.F. serious physical harm. Victims T.L. and R.K. were present in the home at the time of the incident. As a result of the defendants' conduct, C.F. suffered a broken bone in his neck, bruising on his face, two broken ribs, a ruptured spleen, and internal bleeding. He died as a result of his injuries.

{¶ 5} In June 2018, Malicke entered into a plea agreement with the state. Following an extensive Crim.R. 11 colloquy, Malicke pleaded guilty to attempted murder in violation of R.C. 2923.02 and 2903.02, as amended in Count 1; and aggravated burglary in violation of R.C. 2911.11(A)(1), as amended in Count 4. The remaining counts were dismissed. The trial court accepted Malicke's guilty plea, referred him to the probation department for a presentence investigation report ("PSI"), and set the matter for sentencing.

{¶ 6} At the sentencing hearing, the trial court raised the issue of allied offenses. Following a brief discussion, the parties agreed that the crimes were not allied offenses.

{¶ 7} On behalf of Malicke, defense counsel asked the trial court to consider relevant mitigating factors, including Malicke's age, his lack of a felony record, his sincere remorse, and the scope of his involvement in the underlying criminal incident. Counsel indicated that Malicke was merely coming "to the aide of his mother" and that "emotion got the best of [Malicke]." In addition, counsel maintained that Malicke's "participation was less than the other two individuals," as evidenced by his plea "to attempted murder rather than involuntary manslaughter."

{¶ 8} Malicke addressed the court and accepted responsibility for his actions and asked the court to impose a sentence that is not "harshful against [him]."

{¶ 9} The trial court then heard from the state and family members of C.F. Relevant to this appeal, the state disputed defense counsel's interpretation of Malicke's involvement in C.F.'s death. The state indicated that each of the three defendants entered C.F.'s home without consent and with the intent "to invoke serious physical harm that led to [C.F.'s] death." The state informed the court that Malicke was seen hitting C.F. in has face while his brother was hitting C.F. in the body. The state noted that C.F. had "significant bruising all around his face and neck, scratches all along his neck, with a broken bone in his neck." In addition, the state explained that the decision to have Malicke plead to attempted murder rather than involuntary manslaughter was not predicated on a determination that Malicke was "less culpable." Rather, the state expressed that the plea agreement was tactically created "so that [Malicke] could be sentenced as an adult." Finally, the state dismissed defense counsel's reference to Hentges's influence over Malicke,

stating "he could have told his mother no. * * * [The defendants] went over there in agreed force and placed force on [the victim]."

{¶ 10} C.F.'s fiancée, victim R.K., stated that she is Hentges's sister. R.K. detailed the mental and psychological harm she has endured as a result of her fiancé being killed just five days before their wedding. She asked the court to hold the defendants accountable for "everything they've done." In addition, R.K. expressed her intent to obtain a protection order against the defendants, stating:

> Oh, and, Your Honor, Malicke Franklin had a gun, hit my fiancé in the head with a gun. Then Malicke pointed the gun at me and told me if I said anything he was going to kill me. So there is threats from that — my sister's family, and I fear for my life.

{¶ 11} Regarding the relevant consecutive sentence factors, the state referenced the seriousness of the crimes committed by the defendants and the lasting impact their actions have, and will continue to have, on the victims, stating:

> [R.K.] now has to live — as well as for consecutive sentences — the seriousness and harm to the public, the threats to her, to the other witnesses, the significant harm that she still faces to this day, having to go through counseling and other issues like that. But the other thing is, a lot of women came up and spoke to you. A lot of women came in and spoke about how [Mr.] C.F. raised them, helped them. That's a lot of people in the public that have been affected. Their children, his grandchildren, nieces, nephews, they all have been impacted by the behavior of this woman, who instead decided to bring a use of force. So the harm to the public and the seriousness in this case is they didn't go over to confront him. This is family. They could have spoke to him. They went over there in a use of force. She actually got three men with her, the two actually contributed and fought and beat this man to his death. I think that's almost stronger than shooting someone because you're using your own power to kill someone.

{¶ 12} Finally, the trial court stated that it considered Malicke's PSI, which detailed the circumstances that led to the attack of C.F., the magnitude of C.F.'s

injuries, the extent of Malicke's involvement in the incident, and the scope of the police investigation. Consistent with the facts discussed during the sentencing hearing, the PSI report indicates that witnesses informed the police that Malicke and Nicholas accompanied Hentges to C.F.'s home with knowledge that Hentges planned to "straighten out" C.F. Once inside the home, Hentges immediately attacked C.F. while he was laying in his bed. Nicholas and Malicke then began hitting C.F. Witnesses stated that Nicholas "hit the victim in his body," while Malicke hit C.F. in his head. In addition, it was reported by R.K. that "Malicke pulled out a gun and pointed it at her, telling her she better not say a word about this." Throughout the incident, C.F. did not attempt to fight back.

{¶ 13} Upon consideration, the trial court sentenced Malicke to nine years in prison on each count, to run consecutively, for an aggregate prison term of 18 years.

{¶ 14} Malicke now appeals from his sentence.

## II. Law and Analysis

### A. Mandatory Transfer

{¶ 15} In the first assignment of error, Malicke argues the Cuyahoga County Court of Common Pleas, General Division, did not have jurisdiction over him. Malicke acknowledges that he was subject to mandatory transfer pursuant to R.C. 2152.10(A) and 2152.12(A) because he was 16-years old at the time of the crime and was charged with a category one offense, aggravated murder. Malicke claims, however, that he was not subject to bindover because the statutory provisions

providing for mandatory transfer were severed from the Ohio Revised Code in *State v. Aalim*, 150 Ohio St.3d 463, 2016-Ohio-8278, 83 N.E.3d 862 ("*Aalim I*"). We disagree.

{¶ 16} In *Aalim I*, the Ohio Supreme Court held that the "mandatory transfer of juveniles to the general division of common pleas court violates juveniles' right to due process" under the Ohio Constitution. *Id.* at ¶ 31. The court subsequently reconsidered its decision. *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883 ("*Aalim II*"). In *Aalim II*, the court held that "the mandatory bindover of certain juvenile offenders * * * complies with due process and equal protection." *Aalim II* at ¶ 38. The court vacated its decision in *Aalim I. Aalim II* at *id.*

{¶ 17} Because the Ohio Supreme Court vacated its decision in *Aalim I*, that decision has no effect and is not applicable to this case.

{¶ 18} Accordingly, the first assignment of error is overruled.

## B. Allied Offenses

{¶ 19} In the second assignment of error, Malicke argues the trial court erred by failing to merge his convictions as allied offenses. In the third assignment of error, Malicke claims that he was afforded ineffective assistance of counsel because his attorney conceded that his convictions should not merge.

{¶ 20} R.C. 2941.25(A) provides that "where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import * * * the defendant may be convicted of only one." However,

[w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his [or her] conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each * * * the defendant may be convicted of all of them.

R.C. 2941.25(B).

{¶ 21} Malicke argues that he committed Count 1 (attempted murder) and Count 4 (aggravated burglary) by the same conduct. Malicke concedes that he did not object to the trial court's failure to merge offenses. Therefore, he bears the burden of proof to demonstrate plain error on the record. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. "[E]ven if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it." *Id.* at ¶ 23. In *Rogers*, the Ohio Supreme Court "admonished courts to notice plain error with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Rogers* at *id.*

{¶ 22} It is well-established that where counts contain separate victims, the counts do not merge. *See State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 23 ("[T]wo or more offenses of dissimilar import exist * * * when the defendant's conduct constitutes offenses involving separate victims."); *State v. Crawley*, 8th Dist. Cuyahoga No. 99636, 2014-Ohio-921, ¶ 41 ("[S]eparate victims alone established a separate animus for each offense"). Here, Count 1 named victim C.F. Count 4 named three victims — C.F., R.K., and T.L. Thus, because the counts name different victims, the offenses are not allied.

{¶ 23} Malicke next argues that his counsel was ineffective for failing to argue that Count 1 and Count 4 were allied offenses. In order to establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he or she was prejudiced by that performance. *State v. Hill*, 8th Dist. Cuyahoga No. 106542, 2018-Ohio-4327, ¶ 21, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This court has recognized that where the offenses do not merge, a defendant cannot establish prejudice from his or her trial counsel's failure to request merger. *Hill* at ¶ 22. Having determined Counts 1 and 4 were not allied offenses of similar import, Malicke cannot show that he was prejudiced by his counsel's actions.

{¶ 24} The second and third assignments of error are overruled.

### C. Consecutive Sentences

{¶ 25} In his fourth assignment of error, Malicke argues the imposition of consecutive sentences is not supported by the record.

{¶ 26} We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 16. R.C. 2953.08(G)(2) provides that when reviewing felony sentences, a reviewing court may overturn the imposition of consecutive sentences where the court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under R.C. 2929.14(C)(4)," or (2) "the sentence is otherwise contrary to law." The imposition of consecutive sentences is contrary to

law if a trial court fails to make the findings mandated by R.C. 2929.14(C)(4). *State v. Morris*, 2016-Ohio-7614, 73 N.E.3d 1010, ¶ 24 (8th Dist.), citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

{¶ 27} R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that consecutive sentences are (1) necessary to protect the public from future crime or to punish the offender, (2) that such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 28} Compliance with R.C. 2929.14(C)(4) requires the trial court to make the statutory findings at the sentencing hearing, which means that "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *Bonnell* at ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). Further, the reviewing court must be able to discern that the record contains

evidence to support the findings. *State v. Davis*, 8th Dist. Cuyahoga No. 102639, 2015-Ohio-4501, ¶ 21, citing *Bonnell* at ¶ 29. A trial court is not, however, required to state its reasons to support its findings, nor is it required to precisely recite the statutory language, "provided that the necessary findings can be found in the record and are incorporated in the sentencing entry." *Bonnell* at ¶ 37.

{¶ 29} Where the trial court made the requisite consecutive sentencing findings, R.C. 2953.08(G)(2) requires this court to affirm an order of consecutive service unless we "clearly and convincingly" find that the record does not support the court's findings in support of consecutive sentences. *State v. Simmons*, 8th Dist. Cuyahoga No. 107144, 2019-Ohio-459, ¶ 11.

> Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. "This is an extremely deferential standard of review." *State v. Venes,* 2013-Ohio-1891, 992 N.E.2d 453, ¶ 21 (8th Dist.).

{¶ 30} Regarding the scope of the information to be considered by the sentencing court, R.C. 2929.19(A) allows for "the offender, the prosecuting attorney, the victim or the victim's representative * * * and, with the approval of the court any other person" to "present information relevant to the imposition of sentence in the case." Pursuant to R.C. 2929.19(B), "the court, before imposing sentence, shall consider the record, any information presented at the hearing by any person

pursuant to division (A) * * *, the presentence investigation report * * *, and any victim impact statement made pursuant to [R.C. 2947.051]."

{¶ 31} Thus, "R.C. 2929.19 grants broad discretion to the trial court to consider any information relevant to the imposition of a sentence." *State v. Asefi,* 9th Dist. Summit No. 26931, 2014-Ohio-2510, ¶ 8. Ohio courts have routinely held that this includes consideration of uncharged criminal conduct so long as that is not the sole basis for the sentence. *State v. Tidmore,* 8th Dist. Cuyahoga No. 107369, 2019-Ohio-1529, ¶ 26. *See also State v. Cooper,* 8th Dist. Cuyahoga No. 93308, 2010-Ohio-1983, ¶ 15 ("a defendant's uncharged yet undisputed conduct may be considered in sentencing without resulting in error when it is not the sole basis for the sentence"); *State v. Ellis,* 2d Dist. Montgomery No. 25422, 2013-Ohio-2342, ¶ 15 ("[A] trial court may consider 'a broad range of information when sentencing a defendant,' including 'allegations of uncharged criminal conduct.'"), quoting *State v. Bowser,* 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 13, 15 (2d Dist.).

{¶ 32} On appeal, Malicke does not argue that the trial court failed to make the requisite consecutive-sentencing findings under R.C. 2929.14(C)(4). Rather, Malicke contends that the record does not support the trial court's findings. According to Malicke, "there is no factual basis" supporting the trial court's findings and its imposition of a consecutive sentence of 18 years in prison. He further asserts that his lack of a criminal history, his sincere remorse, the influence of his mother, and his "minor" role in the victim's death are factors that support the imposition of concurrent sentences.

{¶ 33} After careful review of the record in its entirety, we find no basis to clearly and convincingly conclude that the record does not support the court's findings under R.C. 2929.14(C)(4). Given the violent and calculated nature of the conduct involved in this case, we find the information set forth in this record amply supports the trial court's findings regarding the seriousness of the crimes and the need to punish Malicke. Malicke was not a minor participant in the commission of the crimes. Rather, the record contains ample information that Malicke, along with his codefendants, carefully planned to enter C.F.'s home in an effort to cause C.F. serious physical harm. Once inside, Malicke participated in the brutal attack of C.F., who was helplessly outnumbered and unprotected in his bed. Regarding the relative seriousness of Malicke's individual conduct in this case, the record demonstrates that Malicke continuously struck C.F. in his face, contributing to the substantial injuries that resulted in his death. C.F. did not provoke Malicke, nor did C.F. induce or facilitate Malicke's commission of the offenses. In addition, while it involved uncharged information properly considered by the trial court under R.C. 2929.19, R.K. alleged that Malicke pointed a gun at her during the commission of the crimes and threated to kill her.

{¶ 34} Upon receiving the foregoing information, the trial court then carefully considered Malicke's familial relationship with the victims, discussed the great harm caused by the offenses, weighed the need to protect the public, and evaluated the proportionality of the punishment to Malicke's conduct. The trial court described the crimes committed by Malicke as "extremely violent" and

discussed the ongoing trauma caused to C.F.'s family. The court further rejected defense counsel's characterization of Malicke's involvement in the crimes, stating:

> A man [was] beaten to death by three people in front of his fiancée and the other occupants of the home. * * * [The] three of you did it together, you're all equally responsible and that's the way the Court sees it.

{¶ 35} Finally, regarding the great or unusual harm caused by the multiple offenses, the record contained ample information that, in addition to the unquestionable harm caused by the attempted murder offense, other victims present in the home were caused great emotional and psychological harm by Malicke's commission of the aggravated burglary offense. As stated, the harm caused by the aggravated burglary derived from a carefully calculated plan to forcefully enter C.F.'s home. The offense was committed against family members, with an understanding that they would be present in the home, and without regard for their safety as the defendants forced their way inside the home and attempted to settle a vendetta against C.F.

{¶ 36} On appeal, Malicke merely disputes the trial court's interpretation of his conduct and reiterates the mitigation arguments that were raised by defense counsel during the sentencing hearing. While Malicke disagrees with the trial court's decision to exercise its discretion to impose consecutive sentences, R.C. 2953.08(G)(2) makes clear that our standard of review is not whether the sentencing court abused its discretion. *State v. Perkins*, 8th Dist. Cuyahoga Nos. 106877 and 107155, 2019-Ohio-88, ¶ 17. Appellate courts are not sentencing courts.

Therefore, "[w]e cannot substitute our judgment for that of the sentencing judge." *State v. McCoy*, 8th Dist. Cuyahoga No. 107029, 2019-Ohio-868, ¶ 19.

{¶ 37} We note that Malicke's lack of a criminal history did not render the imposition of consecutive sentences to be inappropriate in this case. As this court has previously explained, even where a defendant has no criminal history, consecutive sentences may be imposed if the court makes one of the alternative findings under R.C. 2929.14(C)(4)(a) or (b). *State v. Nave*, 8th Dist. Cuyahoga No. 107032, 2019-Ohio-348, ¶ 7. Here, the court found R.C. 2929.14(C)(4)(b) applied, stating that Malicke's commission of the attempted murder and aggravated burglary offenses caused harm that "is so great or unusual that a single term is not adequate to reflect the seriousness of the conduct." As stated, it cannot be concluded that the record clearly and convincingly does not support this finding given the circumstances of the offenses.

{¶ 38} The record further reflects that the trial court considered Malicke's claims of remorse and whether he was likely to commit future crimes as required under R.C. 2929.12. At the sentencing hearing, and again in the final entry of conviction, the trial court expressly stated that it considered all sentencing factors as required by law, including the recidivism factors that were offered by defense counsel for consideration. Thus, while Malicke disagrees with the trial court's decision to exercise its discretion to impose consecutive sentences, we find the trial court fulfilled each of its obligations under the applicable sentencing statutes.

{¶ 39} Based on the foregoing, we cannot clearly and convincingly find that the record fails to support the trial court's findings under R.C. 2929.14(C)(4). In addition, the record reflects that the trial court's findings were properly incorporated into the sentencing journal entries as required under *Bonnell*. Malicke's fourth assignment of error is overruled.

### D. Purposes and Principles of Felony Sentencing

{¶ 40} In his fifth assignment of error, Malicke argues the record clearly and convincingly does not support the nine-year prison term imposed on each offense. Malicke submits that this court "should recognize that the record does not support the R.C. 2929.11 and 2929.12 findings that must be made in support of a significant prison sentence." Thus, Malicke asks this court to modify his sentence by reducing his prison term to the statutory minimum three-year prison term.

{¶ 41} A sentence is contrary to law if it falls outside the statutory range for the particular degree of offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12. *State v. Pawlak*, 8th Dist. Cuyahoga No. 103444, 2016-Ohio-5926, ¶ 58. R.C. 2929.11 and 2929.12 are not fact-finding statutes. Therefore, although the trial court must consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors listed in R.C. 2929.12, the court is not required to make findings or give reasons for imposing more than the minimum sentence. *State v. Pavlina*, 8th Dist. Cuyahoga No. 99207, 2013-Ohio-3620, ¶ 15, citing *State v. C.F.*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d

470. A trial court's general statement that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under the sentencing statutes. *Id.*, citing *State v. Wright*, 8th Dist. Cuyahoga No. 95096, 2011-Ohio-733, ¶ 4. And because courts have full discretion to impose sentences within the statutory range, a sentence imposed within the statutory range is "presumptively valid" if the court considered the applicable sentencing factors. *Id.*, citing *State v. Collier*, 8th Dist. Cuyahoga No. 95572, 2011-Ohio-2791, ¶ 15.

{¶ 42} Pursuant to R.C. 2929.11(A), the two[1] overriding purposes of felony sentencing are "to protect the public from future crime by the offender and others," and "to punish the offender using the minimum sanctions that the court determines accomplish those purposes * * *." Additionally, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶ 43} Furthermore, in imposing a felony sentence, "the court shall consider the factors set forth in [R.C. 2929.12(B) and (C)] relating to the seriousness of the

---

[1] There are now three overriding purposes set forth in R.C. 2929.11(A). *See* S.B. 66, Section 1, effective October 29, 2018. The third overriding principle is "to promote the effective rehabilitation of the offender." Franklin was sentenced prior to the amendment's effective date. Moving forward the trial court will be required to carefully consider and give equal weight to the new sentencing purpose of promoting "effective rehabilitation." It is evident that S.B. 66 was formulated in an effort to reduce mass incarceration by rehabilitating individuals, expanding prison alternative programs, and reducing aggregate prison terms. The amendment to R.C. 2929.11 is not inconsequential and sentences should start reflecting the legislature's comprehensive goals.

conduct [and] the factors provided in [R.C. 2929.12(D) and (E)] relating to the likelihood of the offender's recidivism * * *." R.C. 2929.12.

{¶ 44} When a sentence is imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12, "[a]n appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 23.

{¶ 45} In this case, the record demonstrates that the trial court imposed individual prison terms within the applicable statutory ranges and carefully considered the relevant factors set forth under R.C. 2929.11 and 2929.12. The trial court stated that it considered "the purposes and principles of felony sentencing, and all the appropriate recidivism and seriousness factors." The trial court then extensively discussed the relevant seriousness factors, including the "extremely violent" nature of the crimes and the harm caused to C.F. and the other victims. While many mitigating factors set forth under R.C. 2929.12 weighed in favor of Malicke, the record supports the trial court's reliance on the relevant seriousness factors set forth under R.C. 2929.12(B) and (C). As stated, the defendants brutally attacked an unprotected and outnumbered man as he slept in his bed, causing his death with their bare hands. The attack was committed without provocation or inducement, and the defendants clearly intended to cause physical harm. In addition, there is no indication that the trial court relied on inaccurate or demonstrably false information. Under these circumstances, this court is unable to

conclude that Malicke's individual sentences were clearly and convincingly unsupported by the record.

{¶ 46} Viewing Malicke's arguments in their entirety, it is evident that he finds the prison terms imposed in this case to be excessive. However, as this court has previously explained,

> "'The weight to be given to any one sentencing factor is purely discretionary and rests with the trial court.'" *State v. Price*, 8th Dist. Cuyahoga No. 104341, 2017-Ohio-533, ¶ 20, quoting *State v. Ongert*, 8th Dist. Cuyahoga No. 103208, 2016-Ohio-1543, ¶ 10, citing *State v. Torres,* 8th Dist. Cuyahoga No. 101769, 2015-Ohio-2038, ¶ 11. A lawful sentence "'cannot be deemed contrary to law because a defendant disagrees with the trial court's discretion to individually weigh the sentencing factors. As long as the trial court considered all sentencing factors, the sentence is not contrary to law and the appellate inquiry ends.'" *Price* at *id.*, quoting *Ongert* at ¶ 12.

*State v. Bailey*, 8th Dist. Cuyahoga No. 107216, 2019-Ohio-1242, ¶ 15.

{¶ 47} In an effort to challenge the adequacy of the trial court's statutory considerations, Malicke is merely asking this court to substitute our judgment for that of the trial court, which, as stated, appellate courts are not permitted to do. *McCoy*, 8th Dist. Cuyahoga No. 107029, 2019-Ohio-868, at ¶ 19 ("We cannot substitute our judgment for that of the sentencing judge."). Moreover, by asking this court to view the seriousness and scope of his conduct in light of the relevant mitigating factors, Malicke is encouraging this court to independently weigh the sentencing factors, which appellate courts are also not permitted to do. *Ongert* at ¶ 14; *Price* at ¶ 20; *Bailey* at ¶ 15; *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-

1401, 80 N.E.3d 431, ¶ 10, and *State v. Anderson*, 8th Dist. Cuyahoga No. 103490, 2016-Ohio-3323, ¶ 9.

{¶ **48**} In many regards, this case perfectly illustrates the appellate dilemma created by the Ohio Supreme Court's apparent extension of the clear and convincing standard set forth under R.C. 2953.08 to appellate review of a trial court's compliance with R.C. 2929.11 and 2929.12—i.e. statutes that do not require findings of fact*. See Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 23.

{¶ **49**} In this court's en banc decision in *State v. Jones*, 2018-Ohio-498, 105 N.E.3d 702 (8th Dist.), the court held that:[2]

> under *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, the Ohio Supreme Court read R.C. 2929.11 and 2929.12 into R.C. 2953.08(G)(2)(a), allowing an appellate court to increase, reduce, or otherwise modify a sentence or vacate the sentence and remand the matter to the sentencing court for re-sentencing if the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), R.C. 2929.14(B)(2)(e) or (C), R.C. 2929.20(I), as well as R.C. 2929.11 and 2929.12.

*Id.* at ¶ 5, 21.

{¶ **50**} Unquestionably, neither *Marcum* nor *Jones* have expressly overruled this court's well-settled position that reviewing courts are (1) not entitled to substitute their judgment for that of the trial court, and (2) are not entitled to independently weigh the sentencing factors set forth under R.C. 2929.11 and

---

[2] *Jones* has been accepted by the Ohio Supreme Court for review and held for review of *State v. Gwynne*, 5th Dist. Delaware No. 16 CAA 12 0056, 2017-Ohio-7570. *State v. Jones*, 153 Ohio St.3d 1474, 2018-Ohio-3637, 106 N.E.3d 1260. The issue in these two cases is whether R.C. 2953.08(G)(2) allows a court of appeals to review the trial court's findings made pursuant to R.C. 2929.11 and 2929.12.

2929.12. Thus, while appellate courts are now permitted to review the record to ensure that the trial court's considerations of R.C. 2929.11 and 2929.12 are supported by clear and convincing evidence, our review does not entail the subjective reprioritization of the relevant sentencing factors. Such an approach would constitute a quasi de novo sentencing review that would be inconsistent with the appellate court's function and the discretion given to the sentencing court by the General Assembly.

{¶ 51} For these reasons, the reversal of a felony sentence imposed within the applicable statutory range is only appropriate where there is objective information in the record that the trial court (1) failed to consider R.C. 2929.11 and 2929.12 in formulating the sentence, or (2) relied on demonstrably false or inaccurate information when making these considerations. *See State v. Whitaker*, 8th Dist. Cuyahoga Nos. 107584 and 107967, 2019-Ohio-2823, ¶ 18 (finding by clear and convincing evidence that the record did not support the imposed prison term where the record indicated the trial court relied exclusively on the defendant's "prior convictions" in its consideration of the sentencing factors, but the record objectively showed the defendant had no prior criminal convictions at the time of the offenses or at the time of sentencing).

{¶ 52} A conclusion to the contrary would result in inconsistent appellate decisions and, most importantly, the inappropriate substitution of a trial court's sentencing discretion. As stated, Ohio courts have routinely characterized appellate review of felony sentencing as "extremely deferential" to the sentencing court. *See*

*State v. Tidmore*, 8th Dist. Cuyahoga No. 107369, 2019-Ohio-1529, ¶ 22; *State v. Boyd*, 2d Dist. Clark No. 2018-CA-68, 2019-Ohio-1902, ¶ 26; *State v. Robinson*, 4th Dist. Meigs Nos. 18CA10 and 18CA17, 2019-Ohio-2155, ¶ 31; *State v. Payton*, 5th Dist. Muskingum Nos. CT2017-0095 and CT2017-0096, 2018-Ohio-3864, ¶ 22; *State v. Thompson*, 9th Dist. Wayne No. 15AP0016, 2016-Ohio-4689, ¶ 45; *State v. McKnight*, 10th Dist. Franklin Nos. 17AP-778 and 17AP-780, 2018-Ohio-1916, ¶ 15; *State v. Hurd*, 11th Dist. Geauga No. 2018-G-0157, 2019-Ohio-327, ¶ 18; *State v. Blevings*, 12th Dist. Warren No. CA2017-12-175, 2018-Ohio-4382, ¶ 16.  Thus, the purpose of our review is to ensure that the trial court has complied with all applicable sentencing statutes, not to review the discretion utilized by the court during its implementation of these statutes.

{¶ 53} Based on the foregoing, we find no error in Malicke's sentence; his fifth assignment of error is overruled.

### E.  Due Process

{¶ 54} In his sixth assignment of error, Malicke advances a due process argument.  He claims that, while existing case law precedents do not require an appellate court to review the findings made by the trial court in support of a criminal sentence, the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution provide a criminal defendant a right to an appellate review of findings made by the trial court in support of a sentence.  Malicke concedes that this court, as an intermediate appellate court, is bound by the existing precedent, stating "there is therefore no basis for this court

to rule in Malicke's favor with regard to the dictates of due process notwithstanding this assignment of error." Malicke explains that he has advanced the due process argument to preserve the issue pending the Ohio Supreme Court's resolution of *Gwynne*, 5th Dist. Delaware No. 16 CAA 12 0056, 2017-Ohio-7570.

{¶ 55} Finding no merit to his due process claims under the current law of Ohio, we overrule Malicke's sixth assignment of error.

{¶ 56} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN T. GALLAGHER, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
LARRY A. JONES, SR., J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION

LARRY A. JONES, SR., J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 57} I concur in part and dissent in part. I agree with the majority on its disposition of the first, second, and third assigned errors. I would sustain Malicke's fourth and fifth assignments of error, and find that his sixth assignment of error is moot.

{¶ 58} Pursuant to *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 123, a reviewing court should "review those sentences that are imposed after consideration of the factors in R.C. 2929.11 and 2929.12 * * * [and] may vacate or modify any sentence that is *not clearly and convincingly contrary to law* only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." (Emphasis sic.) *Jones*, 2018-Ohio-498, 105 N.E.3d 702, at ¶ 16 (8th Dist.), citing *Marcum.* "In other words, even if a sentence is not contrary to law (i.e., it is within the permissible statutory range and the trial court considered R.C. 2929.11 and 2929.12), it is still reviewable and we look to the whole record to determine whether we clearly and convincingly find that the record does not support the sentence." *Jones* at *id.*

{¶ 59} Thus, under R.C. 2953.08(G)(2), this court is required to "'review the record, including the findings underlying the sentence or modification given by the sentencing court.'" *Jones* at ¶ 19, citing R.C. 2953.08(G)(2). "[O]ur review includes the considerations under R.C. 2929.11 and the findings under 2929.12. Then, if after reviewing those findings, we find that the sentence is contrary to law or not supported by the record, we may take action." *Jones* at *id.*

{¶ 60} Our review of felony sentencing must be "meaningful." *See State v. Bratton*, 6th Dist. Lucas Nos. L-12-1219 and L-12-1220, 2013-Ohio-3293, ¶ 8, citing *State v. Carter*, 11th Dist. Portage No. 2003-P-0007, 2004-Ohio-1181. In order to conduct a "meaningful review," we are required to review the entire record, including any reports that were submitted to the court (i.e., a presentence, psychiatric, or other investigative report), the trial record, and any statements made to or by the court at sentencing. *See* R.C. 2953.08(F)(1)-(3).

{¶ 61} After a thorough review of the record, I would find by clear and convincing evidence that the record does not support Malicke's sentence.

{¶ 62} R.C. 2929.11(A) provides:

The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender *using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources*. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, *rehabilitating the offender*, and making restitution to the victim of the offense, the public, or both.

(Emphasis added.)

{¶ 63} A sentence of nine years on each count does not achieve those purposes. Malicke was 16 years old when, at the direction of his mother, he participated in these crimes. The parties, and the court, agreed that, if not for Malicke's mother, the crimes probably would have not been committed.

{¶ 64} There is no doubt that a tragedy occurred in this case — a man lost his life. But incarcerating a juvenile for 18 years, or even nine years, will not serve to

protect the public, excessively punishes Malicke, and further burdens already overburdened governmental resources.

{¶ 65} In addition, the court was charged with considering Malicke separate and apart from his brother and mother but also to sentence him consistent with sentences imposed for similar crimes by similar offenders under R.C. 2929.11(B). Malicke, however, is not similar to his brother and mother. Nicholas, who was by all accounts more culpable than Malicke and who was an adult at the time the crime was committed, received the same sentence as Malicke. Hengtes, their mother, was the ringleader of the group. She received 22 years in prison, but was also convicted of three crimes — involuntary manslaughter, aggravated burglary, and kidnapping — as opposed to Malicke's two convictions.

{¶ 66} Nor do I believe the record supports the findings pursuant to R.C. 2929.14(C)(4) that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and that the "harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness" of Malicke's conduct.

{¶ 67} During the sentencing hearing, the court stated that all three defendants' actions resulted in C.F.'s death and speculated that if there had been fewer participants, someone who was present in the home could have stopped the beating. This fact alone, however, has nothing to do with the relative seriousness of Malicke's individual conduct in this case. The court noted that Malicke was present

only at the behest of his mother. Consequently, the fact that Malicke participated in the crime tells this court nothing about the proportionality between the consecutive nine-year sentences and the seriousness of the criminal activity underlying those sentences. *See State v. Simons*, 2d Dist. Champaign No. 2003-CA-29, 2004-Ohio-6061, ¶ 35.

{¶ 68} Each defendant was convicted and sentenced; I would find that imputing each defendant's conduct to the other defendants as a ground to impose consecutive sentences unfair — the defendants were not charged and convicted as a co-conspirators; they were codefendants. This record does not reflect that the court judged Malicke separate from his mother and brother. In fact, quite the opposite occurred. The court specifically stated: "[The] three of you did it together, you're all equally responsible and that's the way the Court sees it."

{¶ 69} Another trouble I have is with the trial court's findings that consecutive sentences were necessary to protect the public from future crime by the defendants, and that consecutive sentences were not disproportionate to the danger Malicke poses to the public. Implicit in those findings is a finding that, based on the defendant's prior criminal history, he is likely, if not incarcerated to consecutive terms, to offend again. Malicke, however, had no prior record. Thus, on this record, I cannot agree that there exists a need to impose consecutive sentences to protect the public from future crime by Malicke, or that they are not disproportionate to the danger he poses to the public.

**{¶ 70}** The record also does not support the finding that "the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct." Although the parties stipulated at sentencing that the two offenses were not allied offenses of similar import, the fact remains that the criminal conduct in which Malicke engaged to help commit these two offenses occurred within a single episode. Moreover, as mentioned, both the state and the trial court acknowledged that Malicke was present at the scene because of his mother and, if not for her, the crimes probably would have not occurred. Finally, while each offense Malicke committed is serious, neither is made materially more serious by the particular conduct the other offense involves.

**{¶ 71}** There are other concerns as well. In Ohio, as with the rest of the nation, the overall prison population has skyrocketed in recent decades. In 2016, Ohio had 70,365 people in prison compared to 13,489 inmates in 1980. *State by State Data*, https://www.sentencingproject.org/the-facts/#map?dataset-option=BWR (accessed May 8, 2019). Ohio ranks 15th in the nation in the number of incarcerated individuals. *State by State Data*, https://www.sentencingproject.org/the-facts/#rankings?dataset-option=SIR (accessed May 8, 2019). In 2015, there were 2,163 juveniles in Ohio prisons. *Id.*

**{¶ 72}** The number of people imprisoned for a violent crime increased by over 300% between 1980 and 2009. Nazgol Ghandnoosh, *The Next Step: Ending Excessive Punishment for Violent Crimes*, https://www.sentencingproject.org/

publications/the-next-step-ending-excessive-punishment-for-violent-crimes
(accessed May 8, 2019).

> Although the violent crime rate has plummeted to half of its early-1990s level, the number of people imprisoned for a violent offense grew until 2009, and has since declined by just 3 [percent]. This trend stems from increased prison admissions and sentence lengths, despite evidence that excessive penalties are counterproductive.

*Id.*

{¶ 73} A growing number of studies have shown that lengthy prison sentences do not make the public safer, in part, because "long-term sentences produce diminishing returns for public safety as individuals 'age out' of the high-crime years." Mauer, *Long-Term Sentences: Time to Reconsider the Scale of Punishment*, 87:1 UMKC.L.Rev. 121 (2018). In other words, the risk an individual may pose to public safety declines with age and each successive year of incarceration is likely to produce diminishing returns for public safety. *Id.* at 122.

{¶ 74} Under current law, Malicke's bindover from juvenile court was mandatory. But the state offered Malicke a plea to attempted murder instead of the plea offered to his adult codefendants, involuntary manslaughter, to prevent his case from returning to juvenile court. The state admitted the plea was designed to keep Malicke in the general division, in spite of the fact that:

> [t]ransferring youth to the adult criminal justice system has proven to neither broadly deter youth offending nor to reduce reoffending among those convicted. In fact, a systematic review of scientific studies found increased reoffending among those youth who had been tried as adults compared to those tried as juveniles for similar offenses.

(Citations omitted.) *Id.*

**{¶ 75}** Youth who are sentenced to adult facilities are five times more likely to be victims of sexual abuse while in prison and 36 times more likely to commit suicide than their peers in juvenile facilities. Neelum Arya, *Getting to Zero: A 50-State Study of Strategies to Remove Youth from Adult Jails*, UCLA School of Law (2018).

> Compared to adults, [juveniles] are more likely to be harmed by exposure to stress and trauma, but they are also more likely to benefit from rehabilitation. In view of what we know about conditions of confinement in correctional facilities, it's no surprise that juveniles who are released from adult facilities are in worse shape, and are more likely to reoffend, than their counterparts with similar criminal histories who are released from facilities designed with adolescents in mind.

Jessica Lahey, *The Steep Costs of Keeping Juveniles in Adult Prisons*, (Jan. 8, 2016), https://www.theatlantic.com/education/archive/2016/01/the-cost-of-keeping-juveniles-in-adult-prisons/423201 (accessed May 13, 2019), citing Steinberg, Laurence, *Age of Opportunity: Lessons from the New Science of Adolescence* (2014).

**{¶ 76}** In considering the burden to local and state resources, the costs are staggering. It costs $123,400 a year to confine a juvenile in a juvenile facility and $25,900 a year to house an adult in adult prison.[3] (Internal citation omitted.)

---

[3] The Justice Policy Institute places the yearly cost to confine a juvenile much higher – at $202,502, based on a daily cost of $554.80 in 2013. Amanda Petteruti, Marc Schindler, and Jason Ziedenbe, *Sticker Shock, Calculating the Full Price Tag for Youth Incarceration* (Dec. 2014), http://www.justicepolicy.org/uploads/justicepolicy/documents/sticker_shock_final_v2.pdf (accessed May 9, 2019), citing Ohio Department of Youth Services, "Ohio Department of Youth Services: Factsheet" (July 2014).

http://www.juvenilecoalition.org/wp-content/uploads/2011/11/OhioBrochure

FINAL8.5x1111.1.11.pdf (accessed May 8, 2019). Although it is unclear what it costs

per year in Ohio to confine a juvenile to adult prison, a juvenile under the age of 18

must be housed separate from the adult population, leading to increased costs. *See*

R.C. 5120.16; R.C. 341.11; *see also Sticker Shock, Calculating the Full Price Tag for*

*Youth Incarceration*, at *id.* Moreover, when considering the burden on state and

local resources, there is not just the monetary cost of incarceration, but also the

burden that reoffending and recidivism, educational attainment, increased need for

public assistance, and victimization of youth while incarcerated place on state and

local resources. *See generally, id.*

{¶ 77} The racial disparities in the prison population also cannot be ignored.

In 2014, there were 289 per 100,000 whites in prison versus 1,625 per 100,000

imprisoned blacks.[4] *Shadow Report to the United Nations on Racial Disparities in*

*the United States Criminal Justice System* (Aug. 31, 2013),

https:// www.sentencingproject.org/publications/shadow-report-to-the-united-

nations-human-rights-committee-regarding-racial-disparities-in-the-united-

states-criminal-justice-system (accessed May 8, 2019). "Racial minorities are more

likely than white Americans to be arrested; once arrested, they are more likely to be

convicted; and once convicted, they are more likely to face stiff sentences." *Id.* At

---

[4] The racial and ethnic terms used throughout my dissent reflect the language used in the data sources. In addition, we recognize that racial disparities affect other people of color, namely Latinos and Native Americans, but focus on the disparities between whites and blacks in this opinion because Franklin is black.

the current rates of incarceration, 1 in 3 black men can expect to go to prison in their lifetime. *Sentencing Policy*, https://www.sentencingproject.org/issues/ sentencing-policy (accessed May 8, 2019).

{¶ 78} The disparity is present in juvenile incarceration as well: In 2015, there were 86 to 98 per 100,000 white juveniles in custody and 433 to 560 per 100,000 black juveniles in custody. Joshua Rovner, *Racial Disparities in Youth Commitments and Arrests* (Apr. 1, 2016), https://www.sentencingproject.org/ publications/ racial-disparities-in-youth-commitments-and-arrests (accessed May 8, 2019). Of those juveniles who were in custody in 2015, 44 percent were black, despite the fact that African Americans comprise only 16 percent of all youth in the United States. *Black Disparities in Youth Incarceration* (Sept. 12, 2017) https:// www.sentencingproject.org/wp-content/uploads/2017/09/Black-Disparities-in-Youth-Incarceration.pdf (accessed May 8, 2019). Overall, the racial disparity between black and white youth in custody has increased 22 percent since 2001. *Id.* And of those juveniles bound over to adult court in Ohio, 76% are minorities. Children's Law Center, *Falling Through the Cracks: A New Look at Ohio Youth in the Adult Criminal Justice System* (May 2012), https://static1.squarespace.com/ static/571f750f4c2f858e510aa661/t/57d97b37d2b8578c2ccbe572/1473870660296 /Falling-Through-The-Cracks-A-New-Look-at-Ohio-Youth-in-the-Adult-Criminal-Justice-System-May-2012.pdf (accessed May 13, 2019).

{¶ 79} Racial disparities pervade every facet of our criminal justice system. "Roughly 12% of the United States population is black. Yet in 2011, black Americans

constituted 30% of persons arrested for a property offense and 38% of persons arrested for a violent offense. Black youths account for 16% of all children in America yet make up 28% of juvenile arrests." (Internal citations omitted.) *Shadow Report to the United Nations on Racial Disparities in the United States Criminal Justice System, supra.* In the area of sentencing:

> Once minority defendants are convicted, they are likely to be sentenced more harshly than white defendants convicted for similar crimes. As in other areas of the criminal justice system, much overt racial discrimination in the sentencing process has been eliminated over the past decades — yet race remains a significant factor in sentencing decisions.

*Id.*[5]

{¶ 80} While the reasons for racial disparity in our criminal justice system are multi-faceted, "a sizable proportion of racial disparities in prison cannot be explained by criminal offending." Ashley Nellis, *The Color of Justice: Racial and Ethnic Disparity in State Prisons* (June 14, 2016), https://www.sentencingproject.org/publications/color-of-justice-racial-and-ethnic-disparity-in-state-prisons (accessed May 8, 2019). In other words, it is not as simple as stating that there are more blacks in prison because blacks commit more crimes than their white counterparts. Studies show more varied factors such as "policies and practices that drive disparity; the role of implicit bias and stereotypes in decision making; and, structural disadvantages in communities of color which are associated with high rates of offending and arrest." *Id.*

---

[5] R.C. 2929.11(C) provides that "[a] court that imposes a sentence upon an offender for a felony shall not base the sentence upon the race, ethnic background, gender, or religion of the offender."

**{¶ 81}** It bears repeating that Malicke was only 16 years old at the time this crime was committed. He is black. He had no prior record, except for traffic offenses. He attended high school and received his diploma while in custody and prior to his plea hearing. His participation in the crimes was less than that of his codefendants. Based on the record before us, I would find that imprisoning this youth for 18 years, or even nine years, does not advance the primary purposes of felony sentencing, which are to protect the public from Malicke and to punish him using minimum sanctions. While an appellate court's review is to be "extremely deferential," in my opinion, it has too often served as a "rubber stamp" when it comes to sentencing, especially in instances of excessive consecutive sentences.

**{¶ 82}** Thus, pursuant to R.C. 2953.08(G)(2), and as provided in *Marcum*, I would vacate Malicke's sentences and remand the case to the trial court for resentencing. Based on this, I would sustain the fourth and fifth assignments of error and find that the sixth assignment of error is moot.